UNITED STATES *v.* HEALY ET AL.

No. 64. Argued January 6, 1964.—Decided February 17, 1964.

*Stephen J. Pollak* argued the cause for the United States. On the briefs were *Solicitor General Cox, Assistant Attorney General Miller, Beatrice Rosenberg* and *Robert G. Maysack.*

*Robert L. Shevin* argued the cause for appellees. With him on the brief were *R. E. Kunkel* and *Alvin Goodman.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

A federal grand jury alleged in an indictment, returned in the United States District Court for the Southern District of Florida, that on April 13, 1962, the appellees had kidnaped at gunpoint the pilot of a private Cessna 172 airplane and compelled him to transport them from Florida to Cuba. Count 1 of the indictment charged appellees with having violated 18 U. S. C. § 1201,[1] the Federal Kidnaping Act. Under Count 2, appellees were charged with the commission of "aircraft piracy" in contravention of a 1961 amendment to § 902 of the Federal Aviation Act of 1958, 75 Stat. 466, 49 U. S. C. (Supp. IV) § 1472 (i).[2]

The District Court dismissed the indictment on September 17, 1962, before trial. It held that a kidnaping is not "for ransom or reward or otherwise," as required by § 1201 (a), unless committed for the pecuniary benefit of

---

[1] "(a) Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished . . . ."

[2] "(1) Whoever commits or attempts to commit aircraft piracy, as herein defined, shall be punished . . . .

"(2) As used in this subsection, the term 'aircraft piracy' means any seizure or exercise of control, by force or violence or threat of force or violence and with wrongful intent, of an aircraft in flight in air commerce."

the defendant and that a private airplane is not "an aircraft in flight in air commerce" within the meaning of the aircraft piracy provision, which it read as limited to commercial airliners. The Government's petition for rehearing, filed October 17, was denied on November 8. On December 5, the Government filed a notice of appeal to this Court under 18 U. S. C. § 3731, permitting direct appeal when the dismissal of an indictment is based on construction of the statute upon which the indictment is founded. We noted probable jurisdiction, 372 U. S. 963. We conclude that the judgment of dismissal must be reversed.

I.

Appellees contend that this Court is without jurisdiction and is thereby precluded from considering the case on its merits. They argue that, absent authorization by statute or rule, the filing of a petition for rehearing by the Government in a criminal case cannot extend the time for appeal. Rule 11 (2) of this Court provides:

> "An appeal permitted by law from a district court to this court in a criminal case shall be in time when the notice of appeal prescribed by Rule 10 is filed with the clerk of the district court within thirty days after entry of the judgment or order appealed from."

It is undisputed that the notice of appeal was filed by the United States within 30 days from the denial of the petition for rehearing, although not within 30 days of the original entry of judgment. Since the petition for rehearing was filed within 30 days of the judgment, we are not faced with an attempt to rejuvenate an extinguished right to appeal. Cf. *Allegrucci* v. *United States,* 372 U. S. 954. The question, therefore, is simply whether in a criminal case a timely petition for rehearing by the Government filed within the permissible time for appeal

renders the judgment not final for purposes of appeal until the court disposes of the petition—in other words whether in such circumstances the 30-day period prescribed by Rule 11 (2) begins to run from the date of entry of judgment or the denial of the petition for rehearing.

The latter is the well-established rule in civil cases, whether brought here by appeal or certiorari, *e. g., United States* v. *Ellicott,* 223 U. S. 524, 539; *Morse* v. *United States,* 270 U. S. 151, 153–154; *Bowman* v. *Loperena,* 311 U. S. 262, 264–266. That a rehearing petition, at least when filed within the original period for review, may also extend the time for filing a petition for certiorari by a criminal defendant is the unarticulated premise on which the Court has consistently proceeded. See, *e. g., Panico* v. *United States,* 375 U. S. 29 (order extending time for filing entered 19 days after denial of petition for rehearing *en banc,* 45 days after original judgment of Court of Appeals); *Corey* v. *United States,* 375 U. S. 169 (petition for certiorari filed 30 days after denial of rehearing, 45 days after original judgment of Court of Appeals); *Genovese* v. *United States,* decided with *Evola* v. *United States,* 375 U. S. 32 (order extending time for filing entered 16 days after denial of rehearing and rehearing *en banc,* 49 days after entry of original judgment). In *Craig* v. *United States,* 298 U. S. 637, this Court dismissed an application for a writ of certiorari as premature, "without prejudice to a renewal of the application within thirty days after action by the Circuit Court of Appeals on the petition for rehearing." This summary disposition plainly reflects an advertent decision that criminal judgments are nonfinal for purposes of appeal so long as timely rehearing petitions are pending.

We have recently recognized the appropriateness of petitions for rehearing by the United States in criminal cases, *Forman* v. *United States,* 361 U. S. 416, 425–426.

The practice of the Court has been to treat such petitions as having the same effect on the permissible time for seeking review as do similar petitions in civil cases and in criminal cases in which the Government has won below. *United States* v. *Williams,* 341 U. S. 58 (appeal from dismissal of indictment by District Court; notice of appeal filed 29 days after denial of motion for rehearing, 44 days after entry of original order); *United States* v. *Smith,* 342 U. S. 225 (appeal from dismissal of indictment by District Court; notice of appeal filed 28 days after denial of petition for rehearing, 109 days after entry of original order); *United States* v. *Calderon,* 348 U. S. 160 (petition for certiorari from Court of Appeals; order extending time for filing entered 28 days after denial of rehearing, 88 days after entry of original judgment).

Appellees place great reliance on the absence of any statute or rule governing the effect of rehearing petitions of the Government, but both the civil and criminal procedural doctrines lack such a foundation. The wording of Rule 11 (2) of this Court, as unilluminating on this issue as it may be standing alone, is virtually identical to that of Rule 22 (2), which encompasses petitions for certiorari both by criminal defendants and the Government. The inference is compelling that no difference in treatment is intended between appealable judgments and those reviewable by certiorari, or between criminal defendants and the United States. We are constrained to read these rules as consistent with a traditional and virtually unquestioned practice.

Rule 37 (a)(2) of the Federal Rules of Criminal Procedure [3] does not alter this conclusion, since it sheds no

---

[3] *"Time for Taking Appeal.* An appeal by a defendant may be taken within 10 days after entry of the judgment or order appealed from, but if a motion for a new trial or in arrest of judgment has been made within the 10-day period an appeal from a judgment of conviction may be taken within 10 days after entry of the order denying

light on the relevance of a petition for rehearing. Nor can the principle of strict construction of statutes permitting governmental appeals in criminal cases, *Carroll* v. *United States,* 354 U. S. 394, be utilized to undermine a well-established procedural rule for criminal, as well as civil, litigation. No persuasive considerations of policy dictate a deviant standard for government appeals.

Of course speedy disposition of criminal cases is desirable, but to deprive the Government of the opportunity to petition a lower court for the correction of errors might, in some circumstances, actually prolong the process of litigation—since plenary consideration of a question of law here ordinarily consumes more time than disposition of a petition for rehearing—and could, in some cases, impose an added and unnecessary burden of adjudication upon this Court.[4] It would be senseless for this Court to pass on an issue while a motion for rehearing is pending below, and no significant saving of time would be achieved by altering the ordinary rule to the extent of compelling a notice of appeal to be filed while the petition for rehearing is under consideration.

We conclude that this appeal was timely filed and that the Court has jurisdiction to determine the case on its merits.

---

the motion. When a court after trial imposes sentence upon a defendant not represented by counsel, the defendant shall be advised of his right to appeal and if he so requests, the clerk shall prepare and file forthwith a notice of appeal on behalf of the defendant. An appeal by the government when authorized by statute may be taken within 30 days after entry of the judgment or order appealed from."

[4] In this case, the record and legal issues plainly indicate the good faith of the Government in petitioning for rehearing. We would, of course, not countenance the United States' using such petitions simply as a delaying tactic in criminal litigation; there is, however, not the slightest basis for believing that it would try to do so.

## II.

By interpreting 18 U. S. C. § 1201 to require a motive of pecuniary profit, the District Court disregarded the plain holding of *Gooch* v. *United States,* 297 U. S. 124, in which the defendant, who had seized and carried away a state peace officer attempting to effectuate his arrest, was held subject to prosecution under the statute. Prior to a 1934 amendment, the Federal Kidnaping Act had been applicable only if the person transported was held for ransom or reward. The wording was then changed to encompass persons held "for ransom or reward *or otherwise,* except, in the case of a minor, by a parent thereof," 48 Stat. 781. (Emphasis added.) The Court in *Gooch,* noting the ambiguity of the word "reward," found convincing evidence in the amendment's legislative history that the addition of "otherwise" was intended to make clear that a nonpecuniary motive did not preclude prosecution under the statute. The Senate Judiciary Committee, which quoted from a memorandum of the Justice Department, and the House Judiciary Committee both had reported that the bill was designed to extend federal jurisdiction under the Act to cases of persons kidnaped and held "not only for reward, but for any other reason." [5] The Court's conclusion that the amended statute covered the facts before it was clearly in accord with the congressional purpose.

The Courts of Appeals have consistently followed *Gooch, e. g., United States* v. *Parker,* 103 F. 2d 857; *Brooks* v. *United States,* 199 F. 2d 336; *Hayes* v. *United States,* 296 F. 2d 657, and appellees do not challenge the authority of that case. While recognizing that the

---

[5] S. Rep. No. 534, 73d Cong., 2d Sess., Mar. 20, 1934; H. R. Rep. No. 1457, 73d Cong., 2d Sess., May 3, 1934, p. 2.

statute is not limited to kidnapings for pecuniary gain, they assert that it is restricted to kidnapings for an otherwise *illegal* purpose. This contention is without support in the language of the provision, its legislative history, judicial decisions, or reason. The wording certainly suggests no distinction based on the ultimate purpose of a kidnaping; were one intended, the exclusion of parent-child kidnapings would have been largely superfluous, since such conduct is rarely the result of an intrinsically illegal purpose. Nothing in the reports or debates supports appellees' position. In two cases, *Wheatley* v. *United States,* 159 F. 2d 599, 600; *Bearden* v. *United States,* 304 F. 2d 532 (judgment vacated on another ground, 372 U. S. 252), Courts of Appeals have assumed that the applicability of the statute does not turn on the illegality of the ultimate purpose of the kidnaper. No policy considerations support appellees' strained reading of 18 U. S. C. § 1201. A murder committed to accelerate the accrual of one's rightful inheritance is hardly less heinous than one committed to facilitate a theft; by the same token, we find no compelling correlation between the propriety of the ultimate purpose sought to be furthered by a kidnaping and the undesirability of the act of kidnaping itself. Appellees rely on the principle of strict construction of penal statutes,[6] but that maxim is hardly a directive to this Court to invent distinctions neither reflective of the policy behind congressional enactments nor intimated by the words used to implement the legislative goal.[7]

---

[6] *Chatwin* v. *United States,* 326 U. S. 455, which involved the transporting of a girl to maintain a "celestial" marriage, is inapposite. There the element of coercion or deception, central to the crime of kidnaping, was absent.

[7] Our disposition of this issue relieves us from considering whether appellees' ultimate purpose was unlawful and, if so, whether illegality of purpose, if not obvious, is a necessary element in the

We hold that the District Court improperly dismissed the first count of the indictment.

## III.

The 1961 "aircraft piracy" amendment to the Federal Aviation Act makes it a federal crime, *inter alia*, to exercise control, by threat of force with wrongful intent, of "an aircraft in flight in air commerce," § 902 (i), 75 Stat. 466, 49 U. S. C. (Supp. IV) § 1472 (i). Examination of the provision itself and its relation to the rest of the statute, apart from reference to the legislative history, stands against the conclusion of the court below. The Cessna 172 was "an aircraft"; it was "in flight"; it was in flight "in air commerce." Appellees assert that had Congress intended to include private airplanes it could have referred to "any aircraft," but, standing alone, the phrase "an aircraft" is on its face an all-inclusive term. Appellees' contention that the statutory language refers only to commercial airlines is contradicted by the definition of air commerce in the original act, § 101 of the Federal

indictment. However, it may be observed that a trip to Cuba would have been lawful only if appellees had had passports specifically endorsed for travel to Cuba. See Presidential Proclamations No. 2914, Dec. 16, 1950 (64 Stat. A454); and No. 3004, Jan. 17, 1953 (67 Stat. C31); § 215 of the Immigration and Nationality Act of 1952, 66 Stat. 163, 190, 8 U. S. C. § 1185; Department of State Public Notice 179, 26 Fed. Reg. 492, Jan. 16, 1961. Appellees, without claiming lawfulness of purpose, argue that the burden of showing that they had not complied with the regulations governing travel to Cuba rests with the United States and that noncompliance has to be specifically alleged in an indictment.

The discussion concerning the legality of travel to Cuba points up how untenable is appellees' basic position. It would surely be anomalous were application of the Kidnaping Act made to turn on whether existing regulations permit travel to the point of destination without a passport, with an ordinary passport, or only with a passport specially endorsed.

Aviation Act of 1958, 72 Stat. 737, 49 U. S. C. (Supp. IV) § 1301:

"(4) 'Air commerce' means interstate, overseas, or foreign air commerce or the transportation of mail by aircraft or any operation or navigation of aircraft within the limits of any Federal airway or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce."

Without question, this definition covers the facts alleged in the indictment in this case. That the relation between the language of the "aircraft piracy" amendment and the above definition was not overlooked by the drafters is indicated by the different phraseology used in a contemporaneous amendment concerning concealed weapons. Section 902 (l) of the amended act, 75 Stat. 466, 49 U. S. C. (Supp. IV) § 1472 (l), makes it a crime to carry such a weapon "while aboard an aircraft being operated by an air carrier in air transportation." Thus Congress knew how to choose words to refer solely to commercial airliners when it wished to do so.

The conclusions drawn from the statute itself are confirmed by the legislative history. The House Committee on Interstate and Foreign Commerce reported, H. R. Rep. No. 958, 87th Cong., 1st Sess., that the term "air commerce" was used by design because of its broad scope as defined in existing law, p. 8. It specifically cited "the urgent need for stronger Federal laws applicable to criminal acts committed aboard commercial and private aircraft," p. 3, and noted that the subsection regarding weapons "would be limited to aircraft being used in air carrier commercial operations, whereas these other subsections [including that relating to aircraft piracy] would apply also in the case of private aircraft," p. 15.

Comments during House debate accord with the Committee's understanding, see remarks of Congressman Harris (107 Cong. Rec. 16545) and Congressman Williams (107 Cong. Rec. 16547–16548). The remarks of Senator Engle, the sponsor of the aircraft piracy provisions in the Senate, during debate are explicit: "Yes; it applies to all airplanes in air commerce, which includes, of course, not only commercial aircraft, but private airplanes as well." (107 Cong. Rec. 15243). The statements of members of Congress evincing a concern for the protection of passengers aboard commercial airlines, see, e. g., remarks of Congressman Rostenkowski (107 Cong. Rec. 16552), do not reflect any intent to put private aircraft beyond the scope of the provision. Indeed, since one of the often-expressed purposes of the aircraft piracy amendment was to provide a solution to the jurisdictional problems involved in fixing a locus for a crime committed in transit and in arresting a deplaning passenger who may have engaged in criminal activity over the territory of a different State, see, e. g., H. R. Rep. No. 958, 87th Cong., 1st Sess., pp. 3–5, one would suppose, absent any other evidence, a design to include private aircraft; these problems are as pertinent to acts committed aboard them as to those done on commercial airliners. Finding that the plainly expressed intent of Congress, as manifested both in the statutory language and legislative history, was to include private aircraft within the scope of § 902 (i), we conclude that dismissal of the second count of the indictment was also incorrect.

The judgment below is reversed and the case is remanded to the District Court with instructions to reinstate both counts of the indictment.

*It is so ordered.*