UNITED STATES of America, Plaintiff,

v.

Patricia Campbell HEARST, Defendant.

No. CR–74–364 WHO.

United States District Court,
N. D. California.

Feb. 11, 1977.

James L. Browning, Jr., U. S. Atty., F. Steele Langford, David P. Bancroft, Asst. U. S. Attys., San Francisco, Cal., for plaintiff.

F. Lee Bailey, J. Albert Johnson, Boston, Mass., Law Offices of Garret McEnerney, II, E. John Kleines, San Francisco, Cal., for defendant.

## OPINION

ORRICK, District Judge.

Defendant, having been convicted of armed bank robbery under 18 U.S.C. § 2113(a)(d) and use of firearm to commit a felony under 18 U.S.C. § 924(c), now moves for reconsideration of this Court's order denying defendant's motion for new trial. See, Opinion and Order denying defendant's motion for new trial, *United States v. Hearst*, D.C., 424 F.Supp. 307, filed November 19, 1976.

Since the instant motion for reconsideration was filed on January 7, 1977, more than a month after expiration of the time allotted for appeal from this Court's order denying defendant's motion for new trial (Fed.R.App.P. 4[b]), the instant motion is hereby denied, without consideration on the merits, as having been untimely filed.[1] *See, e.g., United States v. Froehlich*, 166 F.2d 84 (2d Cir. 1948); 6A J. Moore *Federal*

---

1. The precedent upon which the motion for reconsideration relies, *United States v. McCrane*, 547 F.2d 204 (3rd Cir. 1976) was filed only three days after this Court's Order denying defendant's motion for new trial. Notwithstanding, defendant filed the instant motion not only after the 10 day appeal period had elapsed but after the discretionary additional 30 day period had elapsed as well. (Fed.R.App.P. 4[b]). Thus, defendant's motion for reconsideration is in no respect a *timely* petition for rehearing, and inferences from the cases of *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964) and *United States v. Dieter*, 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976) are, therefore, inapposite.

*Practice* ¶ 59.13[1], at 59–257 and ¶ 59.13[3], at 59–259 (2d ed. 1974).[2]

However, *were* this Court to entertain, on the merits, defendant's motion to reconsider, this motion would be denied on the ground that *United States v. McCrane,* 547 F.2d 204 (3rd Cir. 1976) does not alter the Court's views concerning the application of *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) to defendant's motion for new trial. See, *United States v. Hearst, supra.*

First, the sole precedent cited by defendant is clearly distinguishable. In *McCrane* the evidence withheld went directly to the credibility of the tie-in witness whose testimony, itself an equivocal "slender reed" (*United States v. McCrane, supra,* at 206), was the *sine qua non* of conviction. By contrast, due to the abundance of independent convicting evidence adduced at trial of the instant case, even thorough impeachment of Shepard's "advancement" testimony would, beyond a reasonable doubt, not have changed the result. See *United States v. Hearst, supra,* at 316.

More importantly, *McCrane* based its finding that a "specific request" had been made on what it discerned to be the clear implication of a particularized example which the defense had included in its "*Brady*"[3] request and which, in the court's view, pointed rather unmistakably to the evidence withheld. Again by contrast, no request of even remotely parallel specificity appears to have been made by the defense in the instant case. Defendant's requests here were highly generalized and explicitly keyed to *Brady.* For example, defendant sought, "pursuant to Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963)" any evidence regarding each potential trial witness "that may tend in any respect to reflect adversely upon his credibility or upon his ability to observe and comprehend the events about which the witness intends to testify."[4] Such a wholly generalized request (amounting to a request for all potentially impeaching evidence with respect to all potential witnesses) at best reiterates, without further specifying or particularizing, the mandates of *Brady.*

Nor was defendant's patently general request rendered "specific" by virtue of Judge Carter's order that the government deliver all "arguably exculpatory evidence" to the defense, including "any evidence that may tend to impeach the testimony of a government witness and thereby exculpate the defendant." See, *United States v. Hearst, supra,* at p. 314. At best this order *re-emphasized* defendant's general request, again without in any way further particularizing it—the order might have urged the government to take another look through its files but the order certainly told the government nothing new about what, specifically, to look *for.*

The Supreme Court in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), indicated that the analytical framework within which *Brady* matters are to be resolved is the degree of notice afforded the government regarding the exculpatory nature of possessed material, the degree of notice being a function of the specificity of the request and the facial character of the material. In the instant case, neither defendant's generalized request nor Judge Carter's equally generalized order gave the government any more notice than did the *Brady* case itself that the Pierre/Davis statements either may have been discoverable (due to "exculpatory" facial character) or were sought by the defense (due to specificity of request).

In no sense, then, do the instant defense requests fall within the facts determined by *McCrane* to constitute "specificity" for the purposes of *United States v. Agurs, supra.*

---

**2.** The court cites to the *civil* procedure portion of Moore's *Federal Practice* because the Supreme Court has intimated that the interrelation between petitions for rehearing and appellate review is to be treated similarly in criminal and civil cases. *United States v. Healy,* 376 U.S. 75, 79, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964).

**3.** *See, Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**4.** Defendant's Motion for Discovery, filed November 21, 1975.

Second, the *dicta* in *McCrane* relied upon by defendant is not necessarily compatible with the rule articulated in *Agurs*.[5]

The Supreme Court in *United States v. Agurs, supra,* 96 S.Ct. at 2397, pointed to the *Brady* case itself as a prime example of the "specific request" category:

" * * * In that case defense counsel had requested the extra-judicial statements made by Brady's accomplice, one Boblit."

The *Brady* request was "specific" because "[i]t gave the prosecutor notice of exactly what the defense desired." *United States v. Agurs supra,* 96 S.Ct. at 2398.[6]

By contrast the Supreme Court indicated that "a general request for exculpatory matter" or for "*Brady* material" falls within the "general request" category. *United States v. Agurs, supra,* 96 S.Ct. at 2399.

In this light, there can be no doubt that the defense requests made in the instant case fit well within the "general" category—these requests, as a practical matter, put the prosecution on no more notice regarding the Pierre/Davis statements than did the obligations imposed by *Brady* itself. Nor does the Court see how the addition of Judge Carter's equally generalized order to the facts of this case could either render defendant's general request "specific" or render defendant's general re-

quest subject to judgment in terms of the *Agurs* specific request test.[7]

In sum, the totality of the circumstances involved in this case put the government on "general" notice only; therefore, as indicated in the Court's Opinion and Order denying defendant's motion for new trial, *United States v. Hearst, supra,* at 309, the general request standard of *Agurs* controls here.

---

5. It should also be noted that the "specific request" finding of *United States v. McCrane,* 547 F.2d 204 (3d Cir. 1976) was couched in somewhat tentative language and cast as an alternative holding. The initial and perhaps primary holding of *McCrane* was:

"If the request made by the defense is considered to fall in the category of the nonspecific, nevertheless this case is one where the verdict has only slight support and 'additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.' *Agurs,* 427 U.S. [97] at 113, 96 S.Ct. [2392] at 2402." *United States v. McCrane,* at 207.

The *McCrane* court went on to indicate that although it "appeared" that defendant's request fell into the "specific" category, assuming *arguendo* that it did not, the circumstances of the case required "that the request be *judged by Agurs'* specific request test." *United States v. McCrane, supra,* at 208 (emphasis added).

In sum, the "specific request" finding of *McCrane* may not be as stalwart or expandable as defendant suggests.

6. This formulation of the "specific request" category has been recently recognized and applied by the Ninth Circuit in *United States v. Lasky,* No. 75-2860/76-2425, 548 F.2d 835, at 839 (9th Cir. 1977).

7. In addition, it must be noted that there is considerable doubt as to whether *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), even applies to evidence which is purely impeaching. The Fifth Circuit has recently held that a higher (from the defendant's perspective) standard applies; *Garrison v. Maggio,* 540 F.2d 1271 (5th Cir. 1976); the Ninth Circuit has left the question open, *United States v. Lasky,* No. 75-2860/76-2425, 548 F.2d 835, at 839, n.3 (9th Cir. 1977); and even the *McCrane* court had its doubts, *United States v. McCrane,* No. 75-1643, 547 F.2d 204, at 205 (3rd Cir. 1976).