United States Court of Appeals,

Eleventh Circuit.

No. 95-2550

Non-Argument Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Brady Lavick ADAMS, Defendant-Appellant.

May 29, 1996.

Appeal from the United States District Court for the Northern District of Florida. (No. TCR 94-04045-01), William Stafford, Judge.

Before ANDERSON, EDMONDSON and BARKETT, Circuit Judges.

PER CURIAM:

Defendant-appellant Brady Lavick Adams was convicted of kidnapping his wife, in violation of 18 U.S.C. § 1201, as well as using and carrying a firearm during the kidnapping, in violation of 18 U.S.C. § 924(c), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e), by a jury in Federal court. He was sentenced to life in prison for the kidnapping count, as well as five years to be served consecutively for the § 924(c) violation and 30 years to be served concurrently for the §§ 922(g) and 924(e) violation. Adams perfected this appeal, alleging that (1) the indictment handed down by the Federal grand jury in this case does not contain an essential element of the § 1201 kidnapping offense, namely, that the kidnapper hold the victim "for ransom or reward or otherwise," rendering the indictment fatally defective, and (2) the evidence presented at trial was insufficient to prove this same element. For the reasons

set forth below, we affirm his conviction.

The victim in this case, Sharee Lovett Adams, married the defendant in 1991. According to the evidence presented by the government, Mrs. Adams left her husband four or five times, and each time Mr. Adams would find her and threaten her with physical harm in order to force her to return to him. In early 1994, while the couple was living in Brunswick, Georgia, Mrs. Adams left the defendant again, first moving to a women's shelter and then to the home of the defendant's sister, from which the defendant had been banned. On this occasion as well, the defendant gained entry into his sister's house by ruse, physically assaulted his wife and forced her to return with him.

In July of 1994, Mrs. Adams left her husband and moved in with her cousin, Delores Uwaezuoke, who resides in Atlanta. She left the defendant a letter asking him to file for divorce, and said that she would do so if he did not. Three to four weeks later, the defendant found his wife. He went to Ms. Uwaezuoke's apartment, but was refused entry on two occasions, first by Ms. Uwaezuoke, and then by Mrs. Adams, who at that time was in possession of a rifle. When Mr. Adams would not leave, Mrs. Adams grabbed the rifle, drove to a telephone and called police. Mr. Adams refused to leave until forced to do so by police. On the following day, a Sunday, a local judge refused to grant Mrs. Adams a stalking warrant, and told her to return on Monday.

On Monday morning, the defendant returned to Uwaezuoke's apartment. He threw a brick through a sliding glass door, entered the apartment, and held a handgun he had purchased in Atlanta to

Ms. Uwaezuoke's head.  He ordered Mrs. Adams to come out of hiding. When Mrs. Adams entered the room, the defendant took her and freed Uwaezuoke.  As he walked Mrs. Adams out to his car, the defendant said, "Bitch you done fucked up now.  You know what I told you I was going to do if you left me."  RII-43.

The defendant tried to force Mrs. Adams into his car, but she fought to free herself.  When she did break free and attempt to run away, the defendant shot her in the abdomen, forced her into the car, and sped away.  He refused to take her to a hospital, going instead to a hotel in Madison, Florida.  There he twice attempted to force Mrs. Adams to have sex with him.  The F.B.I. eventually convinced Mr. Adams to free his wife, and then took him into custody.  Mrs. Adams eventually underwent five operations to repair the wound inflicted by the defendant.

*The sufficiency of the indictment*

In the defendant-appellant's first assignment of error, he insists that the Federal grand jury indictment handed down against him does not include an essential element of the § 1201 kidnapping offense.  That section defines as kidnappers:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds *for ransom or reward or otherwise* any person ... when— ... (1) the person is willfully transported in interstate or foreign commerce ...

18 U.S.C. § 1201 (1994) (emphasis added).  The defendant notes that his indictment does not contain an allegation that he held his wife "for ransom or reward or otherwise," and argues that the indictment is therefore fatally defective.[1]

---

[1]The indictment states:

The original version of § 1201, enacted into law in 1932 and known as the "Lindbergh Act," punished only those who kidnapped another person "for ransom or reward." *See* 18 U.S.C. § 408a (1932), *quoted in Gooch v. United States,* 297 U.S. 124, 125-126, 56 S.Ct. 395, 395-396, 80 L.Ed. 522 (1936). Section 408a was amended on May 18, 1934, to include within its sweep those who kidnap "for ransom or reward *or otherwise.*" 18 U.S.C. § 408a (1934) (emphasis added). The phrase "or otherwise" in the amended statute was construed broadly in *Gooch* to "prevent transportation in interstate ... commerce of persons who were being unlawfully restrained in order that the captor might secure some benefit to himself." *Gooch,* 297 U.S. at 128, 56 S.Ct. at 397. The application of *ejusdem generis* was rejected. The Senate Judiciary Committee stated:

> The object of the addition of the word "otherwise' is to extend the jurisdiction of this act to persons who have been kidnapped and held, not only for reward, *but for any other reason.*

S.Rep. 534, 73d Cong., 2d Sess., *quoted in Gooch,* 297 U.S. at 127, n. 1, 56 S.Ct. at 396-397, n. 1 (emphasis added); *see also* H.Rep. 1457, 73d Cong., 2d Sess., *quoted in Gooch,* 297 U.S. at 128, 56

---

That between on or about August 1, 1994, and on or about August 2, 1994, in the Northern District of Florida and elsewhere, the defendant,

BRADY LAVICK ADAMS

did unlawfully seize, confine, kidnap, carry away and hold against her will Sharee Lovett Adams, and did transport Sharee Lovett Adams in interstate commerce from the state of Georgia to Madison County, Florida;

All in violation of Title 18, United States Code, Section 1201.

S.Ct. at 397 (expression of identical intent by House Judiciary Committee); *United States v. Satterfield,* 743 F.2d 827, 850 (11th Cir.1984) ("The statute broadly prohibits the interstate transportation of a person against his will if the captor hopes to obtain any benefit to himself from the abduction.").

The Supreme Court has subsequently held that § 1201 is not limited to kidnappings committed for an otherwise illegal purpose. *United States v. Healy,* 376 U.S. 75, 81-82, 84 S.Ct. 553, 557-558, 11 L.Ed.2d 527 (1964). In *Healy,* the defendants kidnapped a pilot and forced him to fly them to Cuba. *Id.* at 76, 84 S.Ct. at 554. The district court dismissed the indictment against the defendants on the ground that the kidnapping was not committed for pecuniary benefit. *Id.* at 76-77, 84 S.Ct. at 554-555. The Supreme Court first stated that "the addition of "otherwise' was intended to make clear that a nonpecuniary motive did not preclude prosecution under the statute." *Id.* at 81, 84 S.Ct. at 557. The Court then disposed of defendants' argument that § 1201 at a minimum requires that the kidnapping be committed for an illegal purpose.

> This contention is without support in the language of the provision, its legislative history, judicial decisions and reason. The wording certainly suggests no distinction based on the ultimate purpose of a kidnapping ...

*Id.* at 82, 84 S.Ct. at 557. The Court noted that there were no policy considerations supporting defendants' assertion that § 1201 requires an illegal purpose.

> A murder committed to accelerate the accrual of one's rightful inheritance is hardly less heinous than one committed to facilitate a theft; by the same token, we find no compelling correlation between the propriety of the ultimate purpose sought to be furthered by a kidnapping and the undesirability of the act of kidnapping itself.

*Id.* at 82, 84 S.Ct. at 557.

In *Clinton v. United States,* 260 F.2d 824 (5th Cir.1958), *cert. denied,* 359 U.S. 948, 79 S.Ct. 731, 3 L.Ed.2d 681 (1959), this Court's predecessor construed § 1201 in circumstances quite similar to the case at bar. [2] The indictment in *Clinton* also omitted the phrase "for ransom or reward or otherwise." The court noted, "It is difficult to see how the addition of the words "for ransom or reward or otherwise' would have added anything to the indictment because *obviously "otherwise' comprehends any purpose at all.*" *Id.* at 825 (emphasis added). *See also United States v. Atchison,* 524 F.2d 367, 370-371 (7th Cir.1975) ("[I]t now appears to be well settled that purpose is not an element of the offense of kidnapping and need not be charged or proved to support a conviction under the kidnapping statute, a defect in the indictment's allegation of purpose is collateral in nature.")

Adams argues that *Clinton* does not control the result here for two reasons. First, he argues that the holding in *Clinton* stands in contravention of the Supreme Court's holding in *Chatwin v. United States,* 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946). However, the defendant misreads *Chatwin.* The Court in *Chatwin* held that the statutory language "held for ransom or reward or otherwise" in the Federal Kidnapping Act "implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim."

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

*Id.* at 460, 66 S.Ct. at 235. The Court found that the person allegedly kidnapped by the defendants in that case was not held against her will, and was free to leave at any time. *Id.* The Court reversed the defendants' convictions because the government "failed to prove an act of unlawful restraint." *Id.*

*Chatwin* holds that, for an act of transporting a person across state lines to constitute kidnapping under the predecessor to § 1201, the victim so transported must be held against his or her will. In this regard, *Chatwin* is in no way inconsistent with the holding of the court in *Clinton.* Further, the indictment handed down against Adams clearly states that he "did unlawfully seize, confine, kidnap, [and] carry away" Mrs. Adams and " *hold [her] against her will.*"

However, part of the dicta in *Chatwin* relates to Adams' second argument that *Clinton* does not control our decision in this case. Adams correctly notes that the court in *Clinton* upheld an indictment that, although it lacked the words "for ransom or reward or otherwise," did in fact charge the defendant with "unlawfully and knowingly" transporting the victim in interstate commerce after kidnapping her. The court found that indictment sufficient. Adams argues, in essence, that the indictment handed down against him contains no statement regarding his *mens rea* because there is no language in it that could serve as a substitute for the purpose requirement of § 1201.

The Supreme Court stated as dicta in *Chatwin* that one of the elements of the Federal kidnapping offense is that the kidnapper act "with a willful intent so to confine the victim." *Chatwin,* 326

U.S. at 460, 66 S.Ct. at 235.[3]  Adams argues that, in *Clinton,* the intent element in that indictment served as a substitute for the purpose of the kidnapping element.  He insists that his indictment contains no language that could serve as a substitute for "ransom or reward or otherwise," and thus an essential element of the offense is missing from it.  However, *Chatwin* deals not with the sufficiency of an indictment, but instead with the sufficiency of the government's proof after trial.  An indictment, on the other hand, is sufficiently detailed if it:  (1) contains the essential facts underlying each element of the offense, such that the defendant is properly informed of the proof he must meet, and (2) is specific enough to permit the defendant to use it to protect himself from a subsequent prosecution for the same offense. *Russell v. United States,* 369 U.S. 749, 763-764, 82 S.Ct. 1038, 1046-1047, 8 L.Ed.2d 240 (1962).  It cannot be disputed that the indictment in this case, given its degree of factual and temporal specificity, meets the second of these two criteria.

We also readily reject Adams' claim based on the first *Russell* criterion.  The factual specificity of the indictment more than adequately made him aware of the proof against him and the

---

[3]Because the Court's primary concern and holding in *Chatwin* was that the predecessor to § 1201 required that the restraint applied by the kidnapper be exercised against the victim's will, the Court did not elaborate on the dicta noted above.  The logic of this dicta is that § 1201 should not be construed to punish a person who unknowingly and unintentionally transports across state lines a restrained individual, against that individual's will.  For example, if a trash hauler locks a dumpster, which unknown to him also holds an intoxicated reveler, picks it up and moves it in interstate commerce, he should not be guilty of kidnapping even though he restrained the individual and carried him across state lines, because he did not form the necessary intent to do so.

allegations to which he must answer. The incident at issue is clearly defined, down to the date of the alleged offense. The only arguable deficiency in the indictment is a failure to explicitly charge willfulness. Our resolution of this issue is facilitated by the posture in which Adams' assignment of error is brought to this Court. Adams did not object to the indictment in the district court, but instead makes this argument for the first time on appeal.

When the adequacy of an indictment is challenged for the first time on appeal, this Court "must find the indictment sufficient unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." *United States v. Hooshmand,* 931 F.2d 725, 734-35 (11th Cir.1991) (internal quotations omitted). *Hooshmand* explained, quoting from *United States v. Chilcote,* 724 F.2d 1498, 1505 (11th Cir.), *cert. denied,* 468 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984):

> [P]ractical, rather than technical, considerations govern the
> validity of an indictment. Minor deficiencies that do not
> prejudice the defendant will not prompt this court to reverse
> a conviction.

*Hooshmand,* 931 F.2d at 735.

We readily conclude that Adams suffered no actual prejudice as a result of this indictment. In addition to the factual specificity noted above, the indictment specifically refers to § 1201. *See Chilcote,* 724 F.2d at 1505 ("Moreover, when the indictment specifically refers to the statute on which the charge was based, the statutory language may be used to determine whether the defendant received adequate notice."). Therefore, the ruling

of the district court is affirmed.[4]

AFFIRMED.

---

[4]Adams' challenge to the sufficiency of the evidence against him is without merit and warrants no discussion.