UNITED STATES

v.

**Ramon SANTIAGO, Staff Sergeant (E–6), U.S. Marine Corps.**

NMCM 200100384.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

13 Nov. 2001.

LT Robert Attanasio, JAGC, USNR, Trial Defense Counsel.

LT Deirdre L. Brown, JAGC, USN, Appellate Defense Counsel.

LT Jason A. Lien, JAGC, USNR, Appellate Government Counsel.

Before LEO, Chief Judge, BRYANT, and FINNIE, Appellate Military Judges.

LEO, Chief Judge:

This case is before us as an interlocutory appeal by the Government, filed pursuant to Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 and RULE FOR COURTS-MARTIAL 908, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). Initially, we must determine whether the Government provided timely notice of its intent to appeal the military judge's ruling on the appellate issues presently before us.[1] After reviewing the

---

1. I. WHETHER THE MILITARY JUDGE ERRED WHEN HE APPLIED MILITARY RULE OF EVIDENCE 513 (PSYCHOTHERAPIST–PATIENT PRIVILEGE) TO EXCLUDE THE TESTIMONY OF GOVERNMENT WITNESSES.

II. A. WHETHER THE MILITARY JUDGE ERRED WHEN HE RULED THAT A MEMO-

RANDUM PREPARED IN ACCORDANCE WITH SERVICE DIRECTIVES AND INSTRUCTIONS WAS INADMISSIBLE UNDER MILITARY RULE OF EVIDENCE 513(d)(3); B. WHETHER THE MILITARY JUDGE ERRED WHEN HE RULED THAT TESTIMONY THAT APPELLEE FABRICATED HIS SYMPTOMS TO PSYCHO-

record, we conclude that the issues now before us were addressed in earlier rulings of the military judge, that the Government failed to pursue a timely appeal before this Court of those rulings, and that the Government has not shown good cause why it could not pursue a timely appeal in accordance with statutory and regulatory requirements. Accordingly, we have no jurisdictional authority to consider the appellate issues before us, and the appeal by the Government is denied.

### History of the Case

The appellee is charged with making false official statements and malingering, in violation of Articles 107 and 115, UCMJ, 10 U.S.C. §§ 907 and 915. He was arraigned on 24 August 2000, before a special court-martial convened at Marine Corps Recruit Depot, Parris Island, South Carolina. Prior to entry of pleas, the appellee moved to bar the Government from introducing evidence of any communications with the psychotherapists who saw him for diagnosis or treatment because the admission of such evidence would violate the patient-psychotherapist privilege under MILITARY RULE OF EVIDENCE 513, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.).[2] On 10 January 2001, the military judge ruled that the privilege was waived for Drs. Mather and Rapps, but not for Drs. Tommasi, O'Shea, Colston, and Legler or for 2LT Raney, a medical student who assisted Dr. Colston. Record at 203–05; Appellate Exhibit LII.

On 12 January 2001, the Government provided written notice of its intent to appeal the military judge's ruling barring Tommasi, O'Shea, Colston, Legler, and Raney from testifying for the Government. Appellate Exhibit LI. On 20 February 2001, however, the Government notified this Court of its intention not to pursue its appeal. Appellate Exhibit LIX. Accordingly, we denied as moot the appellee's 16 February 2001 Motion to Dismiss Government Appeal. Appellate Exhibit LX. On 2 March 2001, the Government requested that the military judge reconsider his initial ruling. Appellate Exhibit LVI. After hearing oral argument by the parties on 15 March 2001, the military judge deliberated and affirmed his ruling on 19 March 2001. Appellate Exhibit LXII.

On 11 May 2001, the Government filed a motion *in limine* (styled as a motion for appropriate relief), requesting a preliminary ruling on the admissibility of the following evidence: (1) communications by the appellee in February 2000 to Walter Reed Army Medical Center (Walter Reed) personnel, to wit: Drs. Jones, Frederick, and Cooper; (2) a letter concerning the appellee prepared by Dr. O'Shea dated 9 February 2000;[3] and (3) a memorandum concerning the appellee prepared by Drs. Colston and Legler on 1 March 2000, pursuant to Department of Defense Instruction 6490.4 of 28 Aug 1997. Appellate Exhibit LXIII.

On 4 June 2001, an Article 39(a), UCMJ, session was held to allow oral argument on the *in limine* motion. At the direction of the military judge, the trial counsel summarized for the record the following matters addressed at a R.C.M. 802 conference on 23 March 2001, following the last court session:

On the 23rd of March 2001, an 802 conference involving Colonel Keller, Lieutenant Attanasio, and Major McConnell took place over the telephone.

During this 802 conference, ... defense counsel and trial counsel indicated a need for clarification concerning the military judge's ruling from 10 January as to whether or not that ruling which held that the privilege under 513 had not been waived with regard to Dr. Tommasi, Lieutenant Commander Colston, and Dr. Legler would also apply to the other doctors

THERAPISTS TO AVOID RECRUITING DUTY WAS INADMISSIBLE UNDER MILITARY RULE OF EVIDENCE 513(d)(5).

2. The Government desired to introduce statements by the appellee to these psychotherapists and their assistants concerning his mental state and the findings of the psychotherapists regarding the credibility of those statements.

3. In its brief, the Government states, "Since the trial counsel provided notice, the Government has decided not to appeal the military judge's ruling regarding the admissibility of Dr. O'Shea's letter dated 9 February 2000." Government Brief of 18 Jul 2001 at 3 n.4. Accordingly, the *military judge's 4 June 2001 ruling on this evidence is no longer before this Court.*

such as Dr. Jones and Dr. Cooper and others at Walter Reed.

The military judge indicated that it was his impression that that ruling would extend to anyone involved in the care, treatment, diagnosis of the accused when at Walter Reed. The government requested that the military judge provide his opinion in a supplemental finding of fact and conclusion of law. However, the judge indicated that that would not be done and it would simply be reflected on the record during the next [Article] 39a[, UCMJ] session, which is today.

Record at 235. The military judge and appellee's counsel concurred with the summation of the R.C.M. 802 conference. Record at 238.

Following testimony on the *in limine* motion from Dr. Jones and argument by counsel, the military judge, on 4 June 2001, ruled that Mil. R. Evid. 513 applied to the evidence in the Government's *in limine* motion. Record at 324–27. On 7 June 2001, the Government filed notice of its intent to appeal the military judge's latest ruling and moved on 28 June 2001 to file a record of the proceedings with this Court.

### Article 62, UCMJ, and R.C.M. 908

■ The Government has a limited statutory right to appeal certain rulings by the military judge, including "[a]n order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding." Art. 62(a)(1)(B), UCMJ; *see also* R.C.M. 908 (implementing Art. 62, UCMJ). The period of time within which to file notice of its intent to exercise this right, however, is fixed. The Government must provide written notice that it intends to appeal within 72 hours of the military judge's order or ruling. Art. 62(a)(2), UCMJ; R.C.M. 908(b)(3). Otherwise, the statutory right of appeal is lost, and "we are without jurisdiction to entertain it." *United States v. Flores–Galarza,* 40 M.J. 900, 907 (N.M.C.M.R.1994). We are guided in

our interpretation of this article by the following observation:

The legislative history of Article 62 reflects that Congress intended to permit interlocutory appeals by the Government in courts-martial similar to that enjoyed by the Government in federal civilian criminal proceedings under the Criminal Appeals Act, 18 U.S.C. § 3731.[4] ... [T]he timely filing of notice of appeal is mandatory and jurisdictional, and neither trial nor appellate courts may extend the time for filing the notice.

*Flores–Galarza,* 40 M.J. at 907 (citing *United States v. Sasser,* 971 F.2d 470 (10th Cir. 1992); *United States v. Martinez,* 681 F.2d 1248 (10th Cir.1982), *vacated on other grounds,* 800 F.2d 230 (1986); FED.R.APP.P. 25, 26(b)).

Assuming timely notification of appeal, the military judge's ruling or order is stayed. R.C.M. 908(b)(4). Except for matters unaffected by the ruling or order, the court-martial may not proceed until the Court of Criminal Appeals disposes of the appeal. *Id.* When the Government files a notice of appeal with the military judge, it is duty bound to have its appellate counsel "diligently" prosecute that appeal. Art. 62(a)(3), UCMJ; R.C.M. 908(c)(1). Explicit time limits are set forth in appellate court rules for filings by the Government. *See* CCA RULE 21(d); N.M.CT.CRIM.APP. RULE 4–7c.

### Discussion

■ As the appellee correctly points out, the critical issue in the first instance is whether the Government preserved its right of appeal by providing the military judge with timely notice in accordance with Article 62(a)(2), UCMJ, and R.C.M. 908(b)(3). We begin our discussion by noting that "prosecution appeals are not particularly favored in the courts." *United States v. Pearson,* 33 M.J. 777, 779 (N.M.C.M.R.1991).[5] As a result, statutes that authorize Government appeals, as well as regulations and appellate

---

4. *See also* Rule 4(b) of the Federal Rules of Appellate Procedure, which supplements § 3731 (stating, in pertinent part, that the time period within which Government may file notice of appeal in criminal case is 30 days after entry of judgment or order that is subject of appeal).

5. The right of the prosecution to an interlocutory appeal competes with the right of an accused to a speedy trial and the policy against piecemeal litigation. *Pearson,* 33 M.J. at 779.

court rules implementing them, are strictly construed and enforced. *Id.* at 779. *See e.g., Flores–Galarza,* 40 M.J. at 908 (dismissing appeal for failure to provide timely notice of appeal to military judge); *Pearson,* 33 M.J. at 780–81 (upholding dismissal of appeal for failure to file original record of trial in timely manner); *United States v. Snyder,* 30 M.J. 662, 664 (A.F.C.M.R.1990)(dismissing appeal for failure to file record of trial in timely manner). But, "[t]hey are not so strictly construed [ ] as to defeat the intent of the legislature in authorizing the procedure." *Pearson,* 33 M.J. at 779. *See, e.g., United States v. Bolado,* 34 M.J. 732, 734 (N.M.C.M.R.1991)(construing requirement to forward appeal as occurring when appeal is sent to, as opposed to received by, Government's appellate representative). Accordingly, we seek to enforce the procedures attendant to this appeal in a manner that ensures the orderly administration of justice and discourages piecemeal litigation.

■ The Government gave timely, written notice on 12 January 2001 of its intent to appeal the military judge's initial ruling applying the psychotherapist-patient privilege from Mil. R. Evid. 513 to critical evidence in its case. However, it subsequently withdrew the notice of appeal from this Court on 20 February 2001. Instead, it elected on 2 March 2001 to request reconsideration of the initial ruling. After the military judge reconsidered and affirmed his earlier ruling, the Government *arguably* had an opportunity to file a notice of intent to appeal within 72 hours of the issuance of the reconsideration decision on 19 March 2001. *Compare Canale v. United States,* 969 F.2d 13, 14–15 (2nd Cir.1992)(holding that the time period to file notice of appeal began from date that the request for reconsideration was denied, even though the request was denied as untimely by the trial court) *with Martinez,* 681 F.2d at 1254 (noting that the trial court's acceptance and review of the Government's untimely reconsideration request is not an implicit grant of additional time to appeal the initial ruling). However, the Government did not file a timely appeal after 19 March 2001, and there is no evidence from the record that it could not do so.

The Government argues, however, that the military judge's most recent ruling of 4 June 2001 is separate and distinct from his ruling of 10 January 2001 and, by implication, his ruling on 19 March 2001 because it excludes *new* evidence critical to the Government's case. Government's Reply Brief of 24 Aug 2001 at 4. After carefully reviewing the record, we disagree.

In his ruling on 10 January 2001 (as supplemented on 2 February 2001 by written findings of fact and conclusions of law in Appellate Exhibit LII), the military judge held, in pertinent part, that the Mil. R. Evid. 513 psychotherapist-patient privilege applied to communications between the appellee and the psychologists who examined him (Drs. Colston, Legler, and O'Shea) and that the crime/fraud exception in Mil. R. Evid. 513(d)(5) did not apply as to bar the claim of privilege. In his ruling on 4 June 2001, the military judge held that the memorandum of 1 March 2000, which Drs. Colston and Legler prepared in accordance with departmental directives for the appellee's commanding officer, was not admissible under Mil. R. Evid. 513; he also ruled that Mil. R. Evid. 513 could be asserted with respect to the confidential communications between the appellee and Dr. Jones, who assisted Drs. Colston and Legler in their diagnosis of the appellee, as well as Drs. Frederick and Cooper to the extent that they are similarly situated.

We find that the military judge's ruling of 4 June 2001 concerning the memorandum of 1 March 2000 by Drs. Colston and Legler is not separate and distinct from his ruling on 10 January 2001. The military judge stated in his initial ruling that "the accused may claim the [psychotherapist-patient] privilege regarding *communications* between himself and Dr. Tommasi, LCDR Colston, and Dr. Legler." Appellate Exhibit LII at 5 (emphasis added). We have no doubt that the memorandum in question, Appellate Exhibit XIV, pertained to such *communications* and, therefore, was included in the military judge's initial ruling. *See* Appellate Exhibit LII at 2 (referring to 1 March 2000 memorandum in military judge's supplemental findings of fact supporting his 10 January 2001 ruling). Therefore, it was not new evi-

dence, and the Government's attempt to except it from Mil. R. Evid. 513 by reoffering it under a different theory of admissibility does not make it so.

We, likewise, find that the military judge's ruling of 4 June 2001 concerning Drs. Cooper, Frederick, and Jones was not separate and distinct from the one issued on 10 January 2001 and affirmed on 19 March 2001. In reaching this finding, we noted, in particular, the events that transpired in March 2001, which clarified the extent of the military judge's initial ruling of 10 January 2001. At various points during the Article 39(a), UCMJ, session on 15 March 2001, the trial counsel advised the military judge that Drs. Jones and Cooper had seen the appellee. Record at 213, 221–22, 226. In addition, he introduced the appellee's mental health records from Walter Reed, which showed that Drs. Colston and Legler were the primary attending physicians, Appellate Exhibit LIII at 7, and that Drs. Cooper, Frederick, and Jones assisted in the appellee's mental health examination/evaluation. *Id.* at 14, 27, 69. As noted earlier, counsel for the parties requested clarification on 23 March 2001 of the reconsideration ruling affirming the military judge's original decision. The trial counsel summarized the discussions from that R.C.M. 802 conference and recalled counsel specifically asking the military judge whether the ruling applied to the other psychologists who saw the appellee, "such as Dr. Jones and Dr. Cooper and others at Walter Reed." Record at 235. We read the trial counsel's summary as clearly establishing that the military judge's ruling extended to them, although the military judge would allow the trial counsel to offer a motion on collateral matters at the next session of court. Record at 234–38.

In the factual summary of his *in limine* motion of 11 May 2001, the trial counsel shows that his understanding of the military judge's ruling is consistent with our understanding from the record:

During a R.C.M. 802 telephone conference between the military judge, government counsel, detailed defense counsel, and individual military counsel, the military judge was advised that the government intended to call other psychotherapists involved in the accused's command directed mental health evaluation at Walter Reed (including CAPT Cooper, CAPT Frederick, and Dr. Alvin Jones).... Defense counsel argued, and the military judge agreed, that prior rulings regarding [Mil. R. Evid.] 513 in the case implicitly applied to all psychotherapists that had evaluated the accused at Walter Reed, not just those specifically named in the court's rulings.

Appellate Exhibit LXIII at ¶ 2.o. He added that his request to have the military judge "reflect such implicit application in written supplemental findings of fact and conclusions of law was *denied*," after which the military judge set the schedule for the remainder of the trial. *Id.* (emphasis added).[6] Thus, while the Government may claim that the trial counsel was unaware of the participation of Drs. Cooper, Frederick, and Jones in the appellee's case when the military judge issued his ruling on 10 January 2001, Government's Reply Brief of 24 Aug 2001 at 3, the trial counsel was certainly aware of these individuals at the time he argued his reconsideration request: He made a proffer to the court on 15 March 2001 as to the testimony Drs. Jones and Cooper could provide, if called, to his request. Record at 221, 222, 226.

The military judge's ruling on a question of law or an interlocutory matter is final, unless he later changes his ruling in the course of the trial, R.C.M. 801, or his ruling is appealed in a timely manner. R.C.M. 908(b)(3) and (4). "No form of words and no peculiar formal act are necessary to evince the ruling of a military judge." *Flores–Galarza*, 40 M.J. at 906. It is apparent to us that the

---

6. In summarizing the results of the R.C.M. 802 conference in its reply brief, the Government states, "The military judge indicated that he *would make* a ruling as to that issue [regarding Drs. Cooper, Frederick, and Jones] in the next Article 39(a) session, which was held on 4 June 2001." Government's Reply Brief of 24 Aug 2001 at 6 n.1 (emphasis added). As we read the record, including the summary that the parties agreed was correct, the military judge had made his final ruling on 19 March 2001 concerning the issues before us and simply clarified it for the benefit of the parties on 23 March 2001. Record at 235, 238.

military judge's rulings of 10 January 2001 and 19 March 2001, *in toto,* applied to Drs. Cooper, Frederick, and Jones. His ruling on 4 June 2001 merely affirmed the earlier rulings and essentially dealt with the same evidentiary issues concerning the same individuals previously considered by the court. As we stated earlier, we do not believe that evidence reoffered under a different theory of admissibility becomes new evidence for the purposes of a Government appeal. Therefore, we hold that the 4 June 2001 ruling is not distinct and separate from the earlier judicial rulings, which effectively settled the Mil. R. Evid. 513 evidentiary issue at trial.

The Government argues, in the alternative, that we still have jurisdiction to review an appeal of the 4 June 2001 ruling, even if we find that the ruling effectively constituted a motion for reconsideration and excluded no new evidence. Government Reply Brief of 24 Aug 2001 at 6 n.2. In support of this argument, the Government cites *United States v. Ibarra,* 502 U.S. 1, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991) and *United States v. Dickerson,* 166 F.3d 667 (4th Cir.1999), *rev'd on other grounds,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), for the proposition that the Government can appeal the denial of a reconsideration ruling. In neither of these cases, however, was the Government's motion for reconsideration at trial untimely, nor can either case be construed to dispense with the requirement for timeliness in the submission of such a motion. In *Ibarra,* the Supreme Court held that the issue of timeliness on the Government's appeal of a decision from the federal district court, which denied a motion for reconsideration, is "subsumed" under the rule laid down in *United States v. Healy,* 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). *Ibarra,* 502 U.S. at 7, 112 S.Ct. 4. In *Healy,* the Supreme Court held that a *timely* petition for rehearing renders nonfinal the judgment by the federal district court dismissing an indictment. Therefore, the 30–day time limit within which to appeal the dismissal did not start until the federal district court issued a ruling on the petition for rehearing. *Healy,* 376 U.S. at 78–79, 84 S.Ct. 553.

▪ We note that the Manual allows a party to request reconsideration of a military judge's ruling, but does not address the timeliness of such a request. R.C.M. 905(f). In *Martinez,* the Court made a similar observation with respect to the rules governing criminal and appellate procedures, but determined from *Healy* and *United States v. Dieter,* 429 U.S. 6, 8, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976)(applying *Healy* to 18 U.S.C. § 3731 and FED.R.APP.P. 4(b)) that a motion for rehearing or reconsideration of a judgment at the trial level is timely so long as it is filed within the 30–day period provided by statute or appellate procedural rules to appeal that judgment. *Martinez,* 681 F.2d at 1252–53. Therefore, based upon *Healy* and its progeny, we believe that it is appropriate to apply the time limits from Article 62, UCMJ, and R.C.M. 908 to reconsideration requests, as well, in assessing their timeliness for purposes of possible appeal.

In this case, the Government's *in limine* motion was untimely, even if we were to treat it as a reconsideration request. The trial counsel filed it with the trial court on 11 May 2001, approximately 53 days after the military judge's 19 March 2001 ruling on the reconsideration request. That request was untimely itself in that the trial counsel filed it on 2 March 2001, approximately 51 days after the military judge's original ruling of 10 January 2001. The requirement in Article 62(a)(2), UCMJ, and R.C.M. 908(b)(3) for timely notice of an appeal within 72 hours of the order or ruling is "mandatory," and "[the] military judge is *without authority* to extend the period of time for that notice." *Flores–Galarza,* 40 M.J. at 905 (emphasis added). Likewise, "we are obliged to give effect to the plain meaning of Article 62 and R.C.M. 908 and not legislate our own exceptions to the rule." *Id.* at 908. To do otherwise invites the kind of piecemeal litigation that occurred in this case. We, therefore, conclude that the military judge's ruling of 4 June 2001 did not excuse the Government's failure to appeal the military judge's earlier rulings in a timely manner, nor did it implicitly grant the Government an extension of time within which to start the clock anew for the filing of a timely notice of appeal.

Since the Government withdrew its appeal of the military judge's initial ruling of 10 January 2001 on the evidentiary issues be-

fore us and failed to file a timely notice appealing the military judge's reconsideration decision of 19 March 2001 on those issues, we find no merit in the Government's belated attempt on 7 June 2001 to rejuvenate an extinguished right of appeal. Accordingly, we have no jurisdictional authority to consider the merits of this appeal. Art. 62(a)(2), UCMJ; R.C.M. 908(b)(3); *Flores–Galarza*, 40 M.J. at 905.

### Disposition

We hereby dismiss the Government's appeal and return the record of trial to the Judge Advocate General for action consistent with this ruling.

Judge BRYANT and Judge FINNIE concur.