# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1452

_____

United States of America,

        Appellee,

v.

Robert Statman,

        Appellant.

*
*
*
*
*
*
*
*
*

_____

No. 09-1767

_____

Appeals from the United States
District Court for the
Eastern District of Arkansas.

United States of America,

        Appellee,

v.

Joel Rund,

        Appellant.

*
*
*
*
*
*
*
*
*
*

_____

Submitted: December 14, 2009
Filed: May 4, 2010

_____

Before RILEY,[1] Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

———————

RILEY, Chief Judge.

Joel Rund, Robert Statman, and Gary Kleinman (collectively, the defendants) each pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. The district court[2] sentenced Rund to 18 months imprisonment, Statman to 33 months imprisonment, and Kleinman to probation. The district court also ordered the defendants to make restitution, jointly and severally, in the amount of $1,740,073.51. Rund and Statman appeal their sentences. Rund also appeals the district court's restitution order. We affirm.

## I.    BACKGROUND

In March 2005, a grand jury indicted the defendants with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371; five counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and seven counts of money laundering, in violation of 18 U.S.C. §§ 1957(a), (d)(1) and 2. The indictment also charged Rund with making a false statement, in violation of 18 U.S.C. § 1001(a)(2). The charges arise from the defendants' purchase of a bakery business with funding deceptively obtained from the Arkansas Development Finance Authority (ADFA).

The defendants each pled guilty to one count of conspiracy to commit wire fraud pursuant to written plea agreements. The defendants also agreed to certain stipulations with the government, including a loss amount of more than $1,000,000,

---

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

[2]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

but less than $2,500,000. In exchange, the government agreed to move to dismiss the remaining counts in the indictment.

The district court held a sentencing hearing on February 20, 2009. Rund was unable to attend the hearing due to his poor health. Rund's counsel appeared on Rund's behalf. During the hearing, the parties litigated the proper amount of restitution to be paid by the defendants, and the district court sentenced Kleinman and Statman. The district court sentenced Rund on March 30, 2009.

Rund and Statman (collectively, Appellants)[3] appeal their sentences, arguing their sentences are procedurally and substantively unreasonable. Rund also argues the district court erred by (1) relying on uncorroborated victim testimony in determining restitution, and (2) "adopting the government's methodology in calculating the amount of restitution to impose."

## II.    DISCUSSION
### A.    Procedural Error
An "appellate court must review [each] sentence under an abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 51 (2007). In conducting our analysis, we "must first ensure that the district court committed no significant procedural error, such as . . . failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id.

A sentencing court should first accurately calculate a defendant's advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) range and provide both parties with an opportunity to explain their desired sentence. See id. at 49-50. The district court must then consider all of the § 3553(a) factors and conduct an individualized assessment to determine what sentence is appropriate given the facts

---

[3]Kleinman did not appeal.

in the particular case.  See id.  "[A] district court is not required to provide a 'full opinion in every case,' but must 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'"  United States v. Robinson, 516 F.3d 716, 718 (8th Cir. 2008) (quoting United States v. Rita, 551 U.S. 338, 356 (2007)).

### 1.     Statman's Sentence

During Statman's sentencing hearing, the district court stated it would "consider the factors in 18 United States Code Section 3553 and the sentencing guidelines."  The district court accurately calculated Statman's Guidelines range, finding, based upon Statman's offense level of 19 and criminal history category of I, Statman's Guidelines range was 30 to 37 months imprisonment.  The district court provided Statman with an opportunity to argue for his desired sentence.  Statman's counsel asked for a "sentence that does not involve incarceration," citing Statman's advanced age (69) and physical impairments.  The district court reviewed the medical documentation Statman's counsel provided, and indicated "they have real good medical facilities in the Federal Correction Institution, so . . . unless someone is in a steep dive with regard to their health, I go ahead and let them be treated in the institution."  The district court sentenced Statman to 33 months imprisonment and three years supervised release, and ordered Statman to make joint and several restitution in the amount of $1,740,073.51.

Statman argues the district court procedurally erred by "fail[ing] to explain its reasons for the sentence."  However, "[n]othing in § 3553(a) or in the Booker[4] remedy opinion requires 'robotic incantations' that each statutory factor has been considered."  United States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005) (quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005) (rejected on other grounds by United States v. Pirani, 406 F.3d 543, 552 (8th Cir. 2005) (en banc))).  We are satisfied the district court "'considered [Statman's] arguments and ha[d] a reasoned

---

[4]United States v. Booker, 543 U.S. 220 (2005).

basis for exercising his own legal decisionmaking authority.'" <u>Robinson</u>, 516 F.3d at 718 (quoting <u>Rita</u>, 551 U.S. at 356). We therefore find no procedural error as to Statman's sentence.

### 2.      Rund's Sentence

Rund also argues the district court erred in failing to explain his sentence and discuss the § 3553(a) factors. Rund concedes he failed to object at the time of sentencing, and therefore, we may only review the issue for plain error. <u>See</u>, <u>e.g.</u>, <u>United States v. Miller</u>, 557 F.3d 910, 916 (8th Cir. 2009) (citation omitted) ("Procedural sentencing errors are forfeited, and therefore may be reviewed only for plain error, if no objection was raised in the district court.").

During Rund's sentencing hearing, the district court stated, "I'll work through the guidelines and the factors listed in 18 United States Code Section 3553 and come up with a sentencing guideline range, and I'll sentence within that range, unless there is a reasonable ground not to." The district court correctly calculated Rund's advisory Guidelines range, finding, based upon Rund's offense level of 19 and criminal history category of I, Rund's Guidelines range was 30 to 37 months imprisonment. The district court then heard testimony from Floyd Hancock, the senior investigator of the Federal Public Defender's Office, who offered a declaration from Rund's treating physician documenting Rund's various medical conditions (heart and diabetes) and stating Rund's physical condition was "getting progressively worse." Rund's counsel emphasized Rund's lack of criminal history and asked for a sentence of probation, or "any non[-]prison sentence."

The district court noted, "This is not a case where . . . Rund and the others got into a business and it started going bad and [they] started robbing Peter to pay Paul. There was a larceny in their hearts to begin with, and I still believe that deterrence is crucially important." The district court then sentenced Rund to 18 months imprisonment, three years supervised release, and joint and several restitution in the

amount of $1,740,073.51. The district court recognized Rund's poor health and recommended Rund be incarcerated in "an institution where they have medical facilities sufficient to treat his illnesses which [the court] consider[ed] quite serious." The district court considered the relevant factors and provided a reasoned basis for its sentence. See Robinson, 516 F.3d at 718. The district court committed no procedural error, and certainly no plain error.

### B. Substantive Reasonableness

Appellants also challenge the substantive reasonableness of their sentences. "'We review a challenge to the reasonableness of a sentence for abuse of discretion.'" United States v. Price, 542 F.3d 617, 622 (8th Cir. 2008) (quoting United States v. Starr, 533 F.3d 985, 1003 (8th Cir. 2008)).

Because Statman's sentence is within his advisory Guidelines range, "we accord it a presumption of reasonableness." United States v. Harris, 493 F.3d 928, 932 (8th Cir. 2007) (citing Rita, 551 U.S. at 347), cert. denied, 128 S. Ct. 1263 (2008). The only argument Statman presents in support of his claim that his within-Guidelines sentence is unreasonable is that the district court did not adequately take into consideration Statman's advanced age and poor health in sentencing. During Statman's sentencing hearing, the district court stated it would consider the § 3553(a) factors; it had reviewed Statman's medical documentation; and there were good facilities within the Bureau of Prisons where inmates may receive medical treatment. The district court sufficiently considered Statman's health and age in conducting its analysis, and Statman failed to rebut the presumption that his within-Guidelines sentence is substantively reasonable.

The district court varied below the bottom of Rund's Guidelines range by twelve months. When a district court gives a sentence outside the Guidelines range, we "must give due deference to the district court's conclusion that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 552 U.S. at 51. "The fact

-6-

that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Id.

Rund challenges his below-Guidelines sentence, claiming this court cannot defer to the district court's judgment because the district court failed to conduct an adequate analysis. We disagree. During Rund's sentencing, the district court stated it would consider the § 3553(a) factors. The sentencing court then heard testimony about Rund's medical condition and permitted a declaration from Rund's treating physician to be admitted into evidence. After Rund's counsel asked for a non-prison sentence, the district court replied by emphasizing the severity of the crime and the need for deterrence. The district court then imposed an 18-month prison sentence and recommended Rund be held in an institution which would have sufficient medical facilities to treat Rund's various illnesses. The record reflects the district court conducted an adequate analysis, taking into consideration the evidence Rund presented. Rund's below-Guidelines sentence is not substantively unreasonable.

### C.    Restitution

Rund argues the district court erred by (1) relying on uncorroborated testimony in determining the amount of restitution, and (2) "adopting the government's methodology in calculating the amount of restitution to impose." We review de novo the district court's interpretation of the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. §§ 3663A-3664. See United States v. Farish, 535 F.3d 815, 826 (8th Cir. 2008). We review for clear error the district court's factual determinations underlying an order for restitution, see United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007), as well as "the district court's finding as to the proper amount of restitution." United States v. Stennis-Williams, 557 F.3d 927, 930 (8th Cir. 2009). "The burden is on the government to prove the amount of restitution based on a preponderance of the evidence." DeRosier, 501 F.3d at 896. The government satisfies this standard when it demonstrates "the existence of a fact is more probable

than its nonexistence." In re Winship, 397 U.S. 358, 371 (1970) (Harlan, J., concurring) (internal marks omitted).

### 1. Testimony

Rund pled guilty to wire fraud and stipulated the amount of loss his offense caused was more than $1,000,000, but less than $2,500,000. The district court conducted a restitution hearing. The government elicited testimony from Gene Eagle, who had worked as an employee of ADFA for 24 years, and was ADFA's acting Vice President for Development Finance. Eagle explained "ADFA is a multipurpose bond issuer for the state of Arkansas," and described, in detail, the defendants' fraud.

The defendants' fraud centered around a bakery located in Sherwood, Arkansas. The bakery was owned by the Koehler family, which began to suffer financial difficulties, so the Koehlers sought help from ADFA. ADFA decided to work with the family and hoped to keep the plant operational, because the plant provided employment to a large number of people. ADFA issued the Koehler family a bond in the amount of $2,185,000. The Koehler family pledged collateral for the bond, including three parcels of property owned by the family and the rent proceeds the family received from the property. The family also pledged the bakery, the bakery property, and the bakery equipment. Despite ADFA's bond issue to the Koehlers, the bakery remained in financial distress.

During the summer of 2000, ADFA and the Koehlers began looking for someone to purchase the bakery. The defendants expressed interest in purchasing the bakery, and ADFA entered into negotiations with the defendants to purchase the bakery and assume the bond issue from the Koehlers. The defendants presented their business plan, to manufacture a type of fruit-filled pastry, and agreed to assume the $2,185,000 bond issue. In April 2001, the agreement was finalized. ADFA agreed to provide the defendants an additional $1,700,000—$1 million to be spent on equipment and $700,000 for working capital—and the defendants agreed to inject an

additional $1.5 million of equity capital into the business, which would also be used for the purchase of equipment and serve as added security for the funds ADFA provided.

To close the deal, the defendants presented ADFA with a signed and notarized document, purportedly from an investor who had agreed to provide the $1.5 million equity capital. The defendants then sought the agreed upon funding from ADFA by presenting documentation to ADFA which indicated how the money would be used. This documentation included statements for the purchase of equipment, in which ADFA would obtain a security interest. The bakery continued operations for about six months until approximately February 2002, when the bakery closed. The defendants failed to pay employees, vendors, and a roofing company that performed repair work for the bakery. The roofing company placed a lien on the property which ADFA had to pay before the property could be sold.

After the bakery closed, ADFA conducted an inspection and discovered the equipment the defendants claimed to have purchased with ADFA funds had not actually been purchased, but had been leased from another company. As a result, the funding ADFA provided the defendants for the purchase of equipment was completely unsecured. ADFA also learned the signed and notarized document the defendants used to induce ADFA to provide the defendants funding, which purported to be from an investor who had agreed to provide $1.5 million in equity capital, was fraudulent.

After describing the defendants' fraud, Eagle explained the amount of loss ADFA suffered as a consequence of the fraud. Eagle provided exhibits demonstrating the actual dollar amounts expended by ADFA as a result of the fraud, such as the $1.7 million bond principal; interest on the unpaid bond principal in the amount of $84,327.84; the foreclosure expenses; the cost of extinguishing the original $2,185,000 bond issued to the Koehlers; and other interest ADFA paid in the course

of extinguishing the bonds. Eagle also provided specific information regarding the dollar amounts regained by ADFA during and after the fraud, such as the sale of the foreclosed property and rent proceeds from the Koehlers' pledged collateral. Eagle then presented ADFA's proposed restitution figure of $1,740,073.51, by subtracting the amount of money ADFA recouped from the amount of money ADFA expended.

The government also presented the testimony of Charles Lynch, a commercial development officer who had been employed by ADFA for more than nine years. After the fraud, Lynch was responsible for attempting to recoup and sell the collateral originally pledged for the property at issue. As a result, Lynch was able to testify, in more detail, about the monies regained by ADFA after the foreclosure sales, which ADFA then subtracted from its loss. Rund's counsel did not present any evidence to counter the figures ADFA presented, but merely joined in another attorney's argument that ADFA used an improper methodology in its calculation.

The district court adopted the government's proposed restitution figure. We conclude the district court did not clearly err in relying on the detailed testimony of ADFA employees, or in adopting the government's proposed restitution figure. See Stennis-Williams, 557 F.3d at 930.

### 2. Restitution Calculation

Because Rund was absent from the restitution hearing, the district court refrained from making a specific finding as to the amount of restitution to be paid by Rund. Instead, the district court asked Rund's counsel and the government to brief the issue, and provide any additional evidence which would be relevant in the district court's restitution determination. Rund's counsel replied by requesting "the least amount of restitution in comparison to the other defendants in this case." The district court issued another order asking Rund's counsel, "Do you plan on relitigating my February 20, 2009, ruling that the total amount of restitution due is $1,740,073.51?" Rund's counsel emailed the response, "No." As a consequence, the government

-10-

informed the district court that the government would not bring any ADFA representatives to testify at Rund's hearing, which was scheduled to take place in San Diego, California, to accommodate Rund's health problems.

During Rund's sentencing hearing, Rund's counsel re-entered a continuing objection to the $1,740,073.51 restitution figure the district court had adopted, despite Rund's counsel's statements that he would not relitigate the total amount of restitution owed, and Rund's stipulation that the amount of loss caused by his offense was more than $1,000,000 and less than $2,500,000. Rund now appeals the district court's restitution calculation, claiming he preserved the issue by his objection. "Rund submits the district court erred because the loss to ADFA should not have been calculated based on the alleged foreclosure sale price but [, instead, on] the assessed value of the properties."

During the February 20, 2009 restitution hearing, Eagle and Lynch testified that after the fraud, ADFA was forced to initiate foreclosure proceedings to regain control of the property which was fraudulently obtained by the defendants. During the foreclosure process, ADFA incurred various costs, including attorney fees, advertising costs, utility bills, insurance costs, auction expenses, and repair bills. Eventually, ADFA was able to sell the property, but the sale was delayed due to the actions of a co-conspirator.[5] As a result of the delay, ADFA lost potential buyers for the property and acquired even more expenses than it otherwise would have. In conducting its loss calculation, ADFA included the expenses ADFA incurred as a result of the fraud, and subtracted the amount of money ADFA recouped, including the monies ADFA received from the sale of the foreclosed property.

---

[5]Statman placed the defendants' business into bankruptcy the day before the foreclosure auction was to occur.

-11-

The MVRA provides a "court shall order restitution to each victim in the full amount of each victim's losses as determined by the court." 18 U.S.C. § 3664(f)(1)(A). When an offense involves the loss of property, the restitution order shall require the defendant to return the property, or if return of the property is inadequate, the defendant shall pay the greater of (1) "the value of the property on the date of the damage, loss, or destruction; or" (2) "the value of the property on the date of sentencing," less the value of any part of the property which is returned. 18 U.S.C. § 3663A(b)(1). The MVRA does not provide a specific methodology to employ when valuing property. See United States v. Boccagna, 450 F.3d 107, 114 (2d Cir. 2006) (explaining "[t]he statute is silent . . . on the question of *how* the referenced property is to be valued"). "Rather, the law appears to contemplate the exercise of discretion by sentencing courts in determining the measure of value appropriate to restitution calculation in a given case." Id.

In Boccagna, the Second Circuit Court of Appeals conducted an analysis of the exact issue now before us, "whether the MVRA requires property to be valued by reference to fair market value." Id. The Second Circuit noted, "nowhere does the [MVRA] reference fair market value as the only measure to be used in making the restitution calculations contemplated by § 3663A(b)(1)(B)." Id. (internal marks omitted). The Boccagna court concluded, "because the law recognizes a number of reasonable measures of property value, we construe 'value' as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purpose." Id. at 115 (internally citing cases adopting various measures of valuing property). See also United States v. James, 564 F.3d 1237, 1245-47 (10th Cir. 2009) (agreeing with Boccagna and collecting cases where "courts have specifically recognized or used the foreclosure sale price as a reasonable method of determining the amount of the restitution award under § 3663A"). We agree.

Rund would have this court use the appraised value of the foreclosed property to calculate the loss amount, which would result in a lower restitution payment to

ADFA. "The 'primary and overarching goal' of the MVRA 'is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.'" United States v. Balentine, 569 F.3d 801, 806 (8th Cir. 2009) (quoting United States v. Gordon, 393 F.3d 1044, 1053 (9th Cir. 2004)). "The 'intended beneficiaries' of the MVRA's procedural mechanisms 'are the victims, not the victimizers.'" Id. (quoting United States v. Grimes, 173 F.3d 634, 639 (7th Cir. 1999)). Under the circumstances of this case, the district court's use of the foreclosure sale price provided a fair and adequate representation of ADFA's loss and satisfied the overarching goal of the MVRA, to make ADFA whole. The district court did not err.

## III.    CONCLUSION

We affirm the district court's judgment.

_____

-13-