# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1339

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher L. Grant

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: September 17, 2012
Filed: January 15, 2013

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Christopher Grant was convicted of conspiracy to distribute and possess with intent to distribute crack cocaine. The district court sentenced him at the middle of the Sentencing Guidelines range. Subsequently, Grant moved for a sentence reduction pursuant to Amendment 706 of the crack-cocaine Guidelines. During an evidentiary hearing, the court stated that Grant should be sentenced at the bottom of the amended

Guidelines range, and the court subsequently decreased his sentence to the bottom of the amended range. New amendments to the Guidelines qualified Grant for a further amendment of his sentence, which he requested. This time, however, the court sentenced him at the middle of the newly amended Guidelines range without explanation. Grant appeals his newly amended sentence, arguing that the district court abused its discretion. We vacate and remand for further proceedings.

## I. *Background*

Christopher Grant was convicted of one count of conspiracy to distribute and possess with intent to distribute at least 30 but less than 50 grams of crack cocaine. On May 19, 2005, the district court sentenced Grant to 170 months' imprisonment followed by five years of supervised release. This sentence fell in the middle of the Guidelines range of 151 to 188 months for Grant's offense.

In 2008, Grant moved for a sentence reduction pursuant to Amendment 706 of the crack-cocaine Guidelines and 18 U.S.C. § 3582(c)(2). Amendment 706 allows for a sentence reduction if the term of imprisonment was based on a Guidelines sentencing range that has subsequently been lowered. The United States Sentencing Commission made the amendment retroactive pursuant to 28 U.S.C. § 994(o). The district court granted Grant's counsel's request for an evidentiary hearing to determine his eligibility. On June 15, 2009, the district court held the hearing, during which the judge stated:

> I do appreciate the defendant's comments regarding his use of his time while incarcerated. And sometimes people do forget that when they go to prison, they're not simply losing years of their life, they do have an opportunity to work, to get an education, to participate in programming and to help other people while they're incarcerated.

And it appears to me the defendant has taken that message to heart. And I accept his statements as sincere statements that he is making the best use of his time while incarcerated, and that's important.

Frankly, I don't recall the original sentencing in this case. I don't recall why the mid range was chosen. Generally I do sentence at the low end of the guideline range. And I've pulled up the original presentence investigation report and I've looked through the report. And while the defendant's criminal history was not good, it wasn't violent. *So I don't think that the defendant is someone who needs to be incarcerated for longer than the low end of a guideline range.*

Having said that, and having considered all of the statutory factors that I'm required to consider and that I'm not going to repeat here for the record, I will grant the motions for reduction of sentence that appear at [docket filings] 100 and 109. And I will reduce the defendant's sentence to a term of 130 months' incarceration.

(Emphasis added.) The court issued a one-page form order determining the new sentencing range and stating, "Except as provided above, all provisions of the judgment dated May 19, 2005, shall remain in effect." The amended sentence was at the bottom of the amended Guidelines range of 130 to 162 months.

Subsequently, Congress passed the Fair Sentencing Act (FSA) of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), which amended the crack-cocaine Guidelines yet again. Grant sent a letter to the court asking for a reduction under the FSA, and the court docketed the letter as a pro se motion. Under the FSA, the newly amended Guidelines range for Grant's offense became 110 to 137 months. Unlike with the first reduction of Grant's sentence, the district court conducted no evidentiary hearing. On January 12, 2012, the court issued an order determining the newly amended sentencing range and stating that the provisions of the May 19, 2005 judgment remained in effect. However, this time the court reduced Grant's sentence to 123 months, at the middle of the newly applicable Guidelines range. The order did not

discuss any events transpiring subsequent to the 2009 evidentiary hearing that would justify a sentence at the middle (as opposed to the bottom) of the amended Guidelines range.

Grant appeals his sentence, arguing that the district court erred in placing his second amended sentence at the middle of the revised Guidelines range without explanation, rather than at the bottom.

## II. *Discussion*

We review the extent of a sentence reduction under § 3582(c)(2) for an abuse of discretion. *United States v. Burrell*, 622 F.3d 961, 964 (8th Cir. 2010). A proceeding under § 3582(c)(2) is not a full resentencing, *Dillon v. United States,* 130 S. Ct. 2683, 2692 (2010), and the district court's authority to modify a sentence under that section is limited. *United States v. Starks*, 551 F.3d 839, 842 (8th Cir. 2009).

In *Burrell*, the defendant pleaded guilty to conspiracy to possess with the intent to distribute cocaine base and powder cocaine. 622 F.3d at 962. The Guidelines range was 151 to 188 months, and the district court sentenced him to 168 months' imprisonment, at the middle of the Guidelines range. *Id.* Three years later, Burrell requested a reduction in his sentence pursuant to § 3582(c)(2). *Id.* at 963. The advisory range under the amended Guidelines was 121 to 151 months. The court granted Burrell's motion, but it reduced his sentence to only 151 months, at the top of the Guidelines range. *Id.* Burrell appealed, arguing that the court erred by failing to reduce his sentence further within the amended Guidelines range and by failing to explain its decision. *Id.* We vacated the judgment of the district court and remanded for further proceedings. *Id.* at 966. We explained that "[i]t is impossible for us to ensure that the district court did not abuse its discretion if the [§ 3582] order shows only that the district court exercised its discretion rather than showing *how* it exercised that discretion." *Id.* at 964 (quoting *United States v. Marion,* 590 F.3d 475, 477–78 (7th Cir. 2009)) (second alteration in original). We instructed the district

court that it must provide "enough explanation of the court's reasoning to allow for meaningful appellate review." *Id.* at 966.

Applying *Burrell*, we vacate the judgment of the district court and remand because the district court provided no justification for its newly amended sentence, which places Grant in the middle of the amended Guidelines range. Grant's first amended sentence was at the bottom of the amended Guidelines range but his second amended sentence is at the middle of the newly applicable range. The new sentence might be appropriate but no reason for the discrepancy is obvious. On this record, we cannot merely presume that the district court's reasons for setting the first amended sentence at the bottom of the amended Guidelines range apply with equal force to the second amended sentence at the middle of the newly applicable Guidelines range. *See Marion*, 590 F.3d at 477–78.

The government observes that we frequently affirm cases where § 3582 proceedings result in prison terms proportional to the initial sentence. *See Burrell*, 622 F.3d at 965. Yet the government has not justified that result here where the district court held an intervening § 3582 evidentiary hearing in which it expressly stated that the defendant is not "someone who needs to be incarcerated for longer than the low end of a guideline range." At that hearing, the court explained its reasons for sentencing Grant at the bottom of the amended Guidelines range, taking into account his post-conviction rehabilitation. Given the court's stated sentencing criteria for its first amended sentence, we decline to affirm a sentence at the middle of the second amended Guidelines range. We, therefore, remand for the district court to explain how its latest sentence "'is warranted in whole or in part under the particular circumstances of the case.'" *United States v. Winston*, 611 F.3d 919, 922 (8th Cir. 2010) (quoting *Dillon*, 130 S. Ct. at 2692).

### III. *Conclusion*

The district court abused its discretion by failing to provide its rationale for sentencing Grant at the middle of the newly applicable Guidelines range. We vacate and remand for further proceedings consistent with this opinion.

RILEY, Chief Judge, dissenting.

The majority casts its decision as a straightforward application of this court's panel decision in United States v. Burrell, 622 F.3d 961 (8th Cir. 2010). It is not. I fear the majority pushes our court further down the path—begun by Burrell—toward formalism and needless complexity in the 28 U.S.C. § 3582(c)(2) sentencing modification process. Judge Loken's Burrell dissent, in my view, was the more persuasive opinion in that case. See Burrell, 622 F.3d at 966 (Loken, J., dissenting). Although our "panel is not free to depart from the previous holding of another [panel]," Burns v. Gammon, 173 F.3d 1089, 1090 n.2 (8th Cir. 1999), we are not required to broaden the application of the Burrell majority's decision. I would affirm in Grant's case because the district court did all that Burrell required.

### I.    BACKGROUND

To demonstrate that the record "'show[s] *how* [the district court] exercised [its] discretion,'" Burrell, 622 F.3d at 964 (quoting United States v. Marion, 590 F.3d 475, 478 (7th Cir. 2009)), I recite a few more facts than did the majority.

At Grant's sentencing on May 19, 2005, the district court adopted the facts set forth in the modified presentence investigation report as its factual findings. Those adopted facts indicated that Grant was a member of the 37th Street Crips gang, had a gang tattoo on each arm, and—by the age of 21—had amassed six juvenile adjudications and twenty-three adult criminal convictions. Grant's first arrest, for shoplifting, came at the age of eleven. When Grant was fifteen, Omaha police, conducting a traffic stop, found Grant in possession of a stolen semiautomatic pistol.

He received his first jail sentence at the age of sixteen, and, at the age of eighteen, Grant was involved in a gang-related shooting, which left a rival gang-member dead. Grant did not fire a weapon, and he served just over a year in state prison for being an accessory to a felony. Before his imprisonment on that charge, Grant became involved in the conspiracy—to distribute and possesses with intent to distribute crack cocaine—giving rise to this case, and he continued his involvement in the conspiracy after his parole from state prison. Grant's twenty-fifth arrest, which led to his conviction in this case, occurred fewer than three years after he left state prison.

After adopting the revised PSR's factual findings, the district court expressed its intention to sentence Grant in the middle of the United States Sentencing Guidelines (U.S.S.G. or guidelines) range. Rejecting Grant's argument that many of his criminal history points were for "traffic infractions and other violations of that nature," the district court noted Grant "ha[d] steadily been involved in criminal conduct since an early age and also committed several offenses for which no criminal history points were assessed." The district court did "not find that [Grant's] criminal history category [was] overstated." Having "consider[ed] all of the [18 U.S.C. § 3553(a)] factors" and "taking into account the nature of the offense, [Grant's] criminal history and characteristics, the sentences available, the advisory guideline range, and the arguments" advanced during the sentencing proceeding, the district court sentenced Grant to a term of imprisonment—170 months—at the center of the guidelines range of 151 to 188 months. The district court communicated its hope that while Grant was "isolated from society in a correctional facility" he would "make the best use of that time and . . . come out a better person."

At Grant's first sentencing modification, the district court exercised its discretion, under Application Note 1(B)(iii) of U.S.S.G. § 1B1.10, to consider Grant's post-sentencing conduct after Grant delivered a moving speech to the court regarding his time in prison:

> I just want you to know that during my last sentencing . . . you gave me the encouragement to better myself . . . .
>
> And those words have always stuck to me since I've been incarcerated. . . . And I took advantage of the situation and looked at it in a positive light instead of looking at it in a negative way. That's one of the reasons why I let my actions speak louder than my words by presenting you with certificates that I have accomplished and *by keeping my conduct clear* since I've been incarcerated.

(Emphasis added). At the time, Grant's prison record supported his claim that he was a model prisoner: Grant "ha[d] completed drug education classes and GED [sic], as well as various other education classes," and he had no reported disciplinary infractions. It was in this light—not simply, as the majority seems to imply, based on the supposed non-violence of Grant's criminal history—that the district court concluded Grant was not "someone who needs to be incarcerated for longer than the low end of a guideline range."

In 2012, when Grant returned to the district court seeking a second sentencing modification, Grant's prison record was no longer clear: "While in prison, [Grant] ha[d] been sanctioned for possessing an unauthorized item and refusing to obey an order." Grant did not request an evidentiary hearing before the district court reduced his sentence to 123 months—as with Grant's initial sentence, at the center of the recalculated guidelines range of 110 to 137 months. Grant did not file a motion to reconsider after the district court issued the modification order.

## II.    DISCUSSION

I begin by explaining why, even under Burrell's approach to § 3582(c)(2) sentence modifications, the district court did not abuse its discretion in this case. Then, I illustrate how I would decide this case if Burrell did not bind this panel.

-8-

### A. No Abuse of Discretion Under <u>Burrell</u>

Unlike <u>Burrell</u>, this case involves a reduced sentence proportional to the original sentence. As the Supreme Court taught us in <u>Dillon v. United States</u>, 560 U.S. ___, ___, 130 S. Ct. 2683, 2690 (2010), "§ 3582(c)(2) does *not* authorize a sentencing or resentencing proceeding." (Emphasis added). The majority seems to have forgotten this lesson, for it focuses on the difference between Grant's "*first amended* sentence" and his "*second amended* sentence." <u>Ante</u> at 5 (emphasis added). From the Supreme Court's plain reading of § 3582(c)(2) in <u>Dillon</u>, it is obvious a § 3582(c)(2) proceeding modifies the *initial* "term of imprisonment" because any intervening sentencing modification is neither "a sentencing [n]or [a] resentencing," <u>Dillon</u>, 560 U.S. at ___, 130 S. Ct. at 2690.

The district court understood this important distinction. Its order reveals the district court correctly reduced *the* sentence, i.e., Grant's initial 170 month term of imprisonment. The district court's order listed Grant's "Previous Guideline Range" as "151 to 188 months," his "Amended Range" as "110 to 137 months," and reduced his "previously imposed sentence of imprisonment . . . of 170 months . . . to 123 months."

By properly modifying the initial sentence, the district court manifestly and reasonably relied on its original grounds for sentencing Grant at the *middle* of the guidelines range when it reduced his term of imprisonment to the *middle* of the 2011 amended guidelines range. <u>See</u>, <u>e.g.</u>, <u>United States v. Clark</u>, 563 F.3d 722 (8th Cir. 2009). In so doing, the district court did precisely what we said in <u>Clark</u>—and reaffirmed in <u>Burrell</u>—was "*more* than adequate[] to address[] the relevant § 3553(a) factors." <u>Id.</u> (emphasis added); <u>see</u> <u>Burrell</u>, 622 F.3d at 965 ("Our cases applying <u>Clark</u> uniformly have involved proportionality between the initial sentence and the amended sentence.").

The Burrell panel reasoned that the critical factor distinguishing its case from Clark was "missing" proportionality between "the *initial* sentence and the amended sentence." Burrell, 622 F.3d at 965 (emphasis added). Now, the majority abandons this touchstone in favor of a new one—proportionality between one reduced "term of imprisonment," 18 U.S.C. § 3582(c)(2), and another reduced "term of imprisonment," id. See ante at 5. Even if a reduced sentence is proportional to the initial sentence, the majority requires district courts to provide additional justification for a reduced sentence whenever any previous sentence reduction was disproportional to the initial sentence. See ante at 5.

The majority imposes this requirement even here, where the rationale for the intervening disproportionality has disappeared: Grant's prison record, so positive at his first sentence modification, is now blemished with two disciplinary infractions, reflecting a renewal of his long criminal history. Neither Burrell nor 18 U.S.C. § 3582(c)(2) mandates the majority's new requirement, and I see no reason to create such an unnecessary requirement in this case.

### B.     No Plain Error

Because a district court's "fail[ure] to adequately explain the chosen sentence" is a "procedural error," Gall v. United States, 552 U.S. 38, 51 (2007), it is "forfeited, and therefore may be reviewed only for plain error, if no objection was raised in the district court," United States v. Miller, 557 F.3d 910, 916 (8th Cir. 2009). If not bound by Burrell, I would review Grant's claim only for plain error because he did not "raise[] [it] in the district court," id. Whatever error the majority finds, it is certainly not "plain."

The Burrell majority, fashioning a straw man argument from our reference in United States v. Statman, 604 F.3d 529 (8th Cir. 2010), to the defendant's failure to object at "the time of *sentencing*," id. at 534 (emphasis added), proceeded to rebut this argument with the Supreme Court's admonition in Dillon that "§ 3852(c)(2) does

not authorize a *sentencing* or resentencing proceeding," 560 U.S. at ___, 130 S. Ct. at 2690 (emphasis added). See Burrell, 622 F.3d at 965.  By emphasizing our narrow application in Statman of a broad rule, the Burrell majority avoided the impossible challenge of reconciling its holding with the underlying procedural rule.  Indeed, the quotation from Statman containing the reference to "the time of sentencing" cited Miller's broader language. See Statman, 604 F.3d at 534 ("'Procedural sentencing errors . . . may be reviewed only for plain error[] if no objection was raised *in the district court*.'" (quoting Miller, 557 F.3d at 916) (emphasis added)); see also United States v. Burnette, 518 F.3d 942, 946 (8th Cir. 2008) ("Procedural sentencing errors are forfeited, and therefore may be reviewed only for plain error, if the defendant fails to object *in the district court*." (emphasis added)).  This broad rule flows from one of the oldest tenets in our jurisprudence: "No procedural principle is more familiar . . . than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." Yakus v. United States, 321 U.S. 414, 444 (1944).

To manufacture an exception to this principle, the Burrell majority again employed a straw man.  Quoting Fed. R. Civ. P. 51(b), the Burrell majority emphasized one phrase, "'*when the court ruling or order is made or sought*,'" but ignored the all-important preceding "'may.'" Burrell, 622 F.3d at 966 (quoting Fed. R. Civ. P. 51 (b)).  "May," of course, is permissive: "A party may [(i.e., *is permitted to*)] preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the . . . party's objection," Fed. R. Civ. P. 51(b). See, e.g., Black's Law Dictionary 1000 (8th ed. 2004) (defining "may" as "[t]o be permitted to").  Making a contemporaneous objection is one way of preserving a claim of error, but it is not the only way. See, e.g., Caterpillar Inc. v. Lewis, 519 U.S. 61, 74 (1996) ("Lewis, by timely moving for remand, did all that was required to preserve his objection to removal."); United States v. Flenoid, 415 F.3d 974, 976 (8th Cir. 2005) ("The government argues that '[a] motion *in limine* is not a substitute for an objection and does not alone preserve error for review.'  We disagree." (internal citation

omitted)); <u>United States v. Johnson</u>, 906 F.2d 1285, 1290 (8th Cir. 1990) ("Normally the denial of a pretrial motion to suppress evidence preserves the objection for appeal and defense counsel need not renew the objection at trial.").

The district court had "jurisdiction to determine," <u>Yakus</u>, 321 U.S. at 444, Grant's claim that the district court insufficiently explained the sentence reduction, and Grant "ha[d] an opportunity to object," Fed. R. Civ. P. 51(b). He could have filed a motion to reconsider the order.[1] <u>See Burrell</u>, 622 F.3d at 967 (Loken, J., dissenting). Although "[n]one of the Rules of Criminal Procedure authorizes a generic motion to reconsider," <u>United States v. Rollins</u>, 607 F.3d 500, 502 (7th Cir. 2010), motions to reconsider are "a well-established procedural rule for criminal, as well as civil, litigation," <u>United States v. Healy</u>, 376 U.S. 75, 80 (1964). The Supreme Court "grounded [its] decision in <u>Healy</u>, not on any express authorization . . . , but rather on 'traditional and virtually unquestioned practice.'" <u>United States v. Dieter</u>, 429 U.S. 6, 8 n.3 (1976) (quoting <u>Healy</u>, 376 U.S. at 79). Since 1964, the Supreme Court has consistently rejected efforts by our sister circuits to restrict <u>Healy</u>. <u>See</u>, <u>e.g.</u>, <u>Ibarra</u>, 502 U.S. at 6 ("We think that the Court of Appeals' present effort to carve out a different exception to the general rule laid down in <u>Healy</u> must likewise be rejected."). Given Grant's long-established right to object by filing a motion to reconsider, he should not be surprised if failing to do so prejudices him and defeats his challenge on appeal. <u>See</u> Fed. R. Civ. P. 51(b).

The <u>Burrell</u> majority's holding to the contrary is particularly troubling because the Supreme Court has recognized in a similar context that a party's failure to file a

---

[1] An objection presented in a motion to reconsider would have been timely had Grant filed it within the period for filing an appeal, and filing the motion would have tolled the period for filing an appeal. <u>See</u>, <u>e.g.</u>, <u>United States v. Ibarra</u>, 502 U.S. 1, 6 (1991) ("[A] motion for rehearing in a criminal case, like a motion for rehearing in a civil case, renders an otherwise final decision of a district court not final until it decides the petition for rehearing.").

motion to reconsider is prejudicial. See Woelke & Romero Framing, Inc. v. NLRB., 456 U.S. 645 (1982). In Woelke, the Supreme Court considered whether an objection had "'been urged before the [National Labor Relations] Board.'" Id. at 665 (quoting 29 U.S.C. § 160(e)). Rejecting the petitioner's argument that there was no opportunity to object, Justice Marshall wrote for a unanimous court, "[the petitioner] could have objected to the Board's decision in a *petition for reconsideration or rehearing*. The failure to do so prevents consideration of the question by the courts." Id. at 666 (emphasis added). Applying Woelke, we have recognized that when a party cannot make a contemporaneous objection on the record, timely moving for reconsideration preserves an objection. See Des Moines Mailer's Union v. NLRB., 381 F.3d 767, 770 n.1 (8th Cir. 2004) ("[W]e have held that a party who prevails before an administrative law judge must at least present *objections* to the Board in a *motion for reconsideration*." (emphasis added)); NLRB. v. Monson Trucking, Inc., 204 F.3d 822, 826 (8th Cir. 2000) ("At the very least, [the respondent] should have pressed its *objections* before the Board in a *motion for reconsideration*." (emphasis added)). To be sure, the Woelke line of cases involved an application of 29 U.S.C. § 160(e) and not Fed. R. Crim. P. 51(b), but the "procedural principle," Yakus, 321 U.S. at 444, underlying Woelke and this case is the same: parties must timely raise their claims of error in the tribunal of first instance.

As the history of Burrell itself shows, exempting defendants from this settled procedural requirement "impose[s] added and unnecessary burdens on [our] court," Dieter, 429 U.S. at 8, without any corresponding benefit to defendants. First, rather than "giving district courts the opportunity promptly to correct their own alleged errors," id., defendants pressing unmeritorious claims may burden our appellate docket with "Hail Mary" arguments that the district court explained too little in their case. After the Burrell panel remand, the district court in that case re-imposed the same modified sentence, wrote eight pages of additional explanation, and almost two years to the day after our clerk docketed Burrell's original § 3852(c)(2) appeal, we affirmed. See United States v. Burrell, 414 F. App'x 887 (8th Cir. 2011) (unpublished

per curiam); <u>United States v. Burrell</u>, No. 06–CR-81, 2010 WL 4339188 (D. Minn. Oct. 26, 2010).

Second, only those defendants with meritorious claims will seek to "cure[] [the error] 'up front,' [by filing] a motion to reconsider," <u>Burrell</u>, 622 F.3d at 967 (Loken, J., dissenting), because to them the length of the appeals process may actually matter. For example, had Grant successfully moved the district court for reconsideration, he would have left prison months ago. Instead, American taxpayers have paid Grant's lawyer to file an appellate brief containing one page of argument, the U.S. Attorney's Office has expended its limited resources to file a ten-page brief, and we spend countless hours deciding this case. And for what?—so this case can return to the district court for an additional explanation of what is already plain from "the entire sentencing record," <u>United States v. Guarino</u>, 517 F.3d 1067, 1069 (8th Cir. 2008).

## III. CONCLUSION

Sentencing modifications under § 3852(c)(2) need not be as complex as <u>Burrell</u> and the majority require. When district courts hold no hearing and fail to explain themselves, defendants should first object at the appropriate time through motions to reconsider, "giving district courts the opportunity promptly to correct their own alleged errors," <u>Dieter</u>, 429 U.S. at 8. Instead, <u>Burrell</u> mandates a complex and roundabout process, and today the majority draws even more cases into <u>Burrell</u>'s grasp. I respectfully dissent.

_____