RILEY, Chief Judge,
dissenting.
The majority casts its decision as a straightforward application of this court’s panel decision in United States v. Burrell, 622 F.3d 961 (8th Cir.2010). It is not. I fear the majority pushes our court further down the path — begun by Burrell — toward formalism and needless complexity in the 18 U.S.C. § 3582(c)(2) sentencing modification process. Judge Loken’s Burrell dissent, in my view, was the more persuasive opinion in that case. See Burrell, 622 F.3d at 966 (Loken, J., dissenting). Although our “panel is not free to depart from the previous holding of another [panel],” Burns v. Gammon, 173 F.3d 1089, 1090 n. 2 (8th Cir.1999), we are not required to broaden the application of the Burrell majority’s decision. I would affirm in Grant’s case because the district court did all that Burrell required.
I. BACKGROUND
To demonstrate that the record “ ‘show[s] how [the district court] exercised [its] discretion,’ ” Burrell, 622 F.3d at 964 (quoting United States v. Marion, 590 F.3d 475, 478 (7th Cir.2009)), I recite a few more facts than did the majority.
At Grant’s sentencing on May 19, 2005, the district court adopted the facts set forth in the modified presentence investigation report as its factual findings. Those adopted facts indicated that Grant was a member of the 37th Street Crips gang, had a gang tattoo on each arm, and — by the age of 21 — had amassed six juvenile adjudications and twenty-three adult criminal convictions. Grant’s first arrest, for shoplifting, came at the age of eleven. When Grant was fifteen, Omaha police, conducting a traffic stop, found Grant in possession of a stolen semiautomatic pistol. He received his first jail sentence at the age of sixteen, and, at the age of eighteen, Grant was involved in a gang-related shooting, which left a rival gang-member dead. Grant did not fire a weapon, and he served just over a year in state prison for being an accessory to a felony. Before his imprisonment on that charge, Grant became involved in the conspiracy — to distribute and possesses with intent to distribute crack cocaine — giving rise to this case, and he continued his involvement in the conspiracy after his parole from state prison. Grant’s twenty-fifth arrest, which led to his conviction in this case, occurred fewer than three years after he left state prison.
After adopting the revised PSR’s factual findings, the district court expressed its intention to sentence Grant in the middle of the United States Sentencing Guidelines (U.S.S.G. or guidelines) range. Rejecting Grant’s argument that many of his criminal history points were for “traffic infractions and other violations of that nature,” the district court noted Grant “ha[d] steadily been involved in criminal conduct since an early age and also committed several offenses for which no criminal history points were assessed.” The district court did “not find that [Grant’s] criminal history category [was] overstated.” Having “considered] all of the [18 U.S.C. § 3553(a) ] factors” and “taking into account the nature of the offense, [Grant’s] criminal history and characteristics, the sentences available, the advisory guideline range, and the arguments” advanced during the sentencing proceeding, the district court sentenced Grant to a term óf imprisonment — 170 months — at the center of the guidelines range of 151 to 188 months. The district court communicated its hope that while Grant was “isolated from society in a correctional facility” he would “make *432 the best use of that time and ... come out a better person.”
At Grant’s first sentencing modification, the district court exercised its discretion, under Application Note l(B)(iii) of U.S.S.G. § 1B1.10, to consider Grant’s post-sentencing conduct after Grant delivered a moving speech to the court regarding his time in prison:
I just want you to know that during my last sentencing ... you gave me the encouragement to better myself....
And those words have always stuck to me since I’ve been incarcerated.... And I took advantage of the situation and looked at it in a positive light instead of looking at it in a negative way. That’s one of the reasons why I let my actions speak louder than my words by presenting you with certificates that I have accomplished and by keeping my conduct clear since I’ve been incarcerated.
(Emphasis added). At the time, Grant’s prison record supported his claim that he was a model prisoner: Grant “ha[d] completed drug education classes and GED [sic], as well as various other education classes,” and he had no reported disciplinary infractions. It was in this light — not simply, as the majority seems to imply, based on the supposed non-violence of Grant’s criminal history — that the district court concluded Grant was not “someone who needs to be incarcerated for longer than the low end of a guideline range.”
In 2012, when Grant returned to the district court seeking a second sentencing modification, Grant’s prison record was no longer clear: “While in prison, [Grant] ha[d] been sanctioned for possessing an unauthorized item and refusing to obey an order.” Grant did not request an eviden-tiary hearing before the district court reduced his sentence to 123 months — as with Grant’s initial sentence, at the center of the recalculated guidelines range of 110 to 137 months. Grant did not file a motion to reconsider after the district court issued the modification order.
II. DISCUSSION
I begin by explaining why, even under Burrell’s approach to § 3582(c)(2) sentence modifications, the district court did not abuse its discretion in this case. Then, I illustrate how I would decide this case if Burrell did not bind this panel.
A. No Abuse of Discretion Under Burrell
Unlike Burrell, this case involves a reduced sentence proportional to the original sentence. As the Supreme Court taught us in Dillon v. United States, 560 U.S. -, -, 130 S.Ct. 2683, 2690, 177 L.Ed.2d 271 (2010), “§ 3582(c)(2) does not authorize a sentencing or resentencing proceeding.” (Emphasis added). The majority seems to have forgotten this lesson, for it focuses on the difference between Grant’s “first amended sentence” and his “second amended sentence.” Ante at 430 (emphasis added). From the Supreme Court’s plain reading of § 3582(c)(2) in Dillon, it is obvious a § 3582(c)(2) proceeding modifies the initial “term of imprisonment” because any intervening sentencing modification is neither “a sentencing [n]or [a] resentencing,” Dillon, 560 U.S. at -, 130 S.Ct. at 2690.
The district court understood this important distinction. Its order reveals the district court correctly reduced the sentence, i.e., Grant’s initial 170 month term of imprisonment. The district court’s order listed Grant’s “Previous Guideline Range” as “151 to 188 months,” his “Amended Range” as “110 to 137 months,” and reduced his “previously imposed sentence of imprisonment ... of 170 months ... to 123 months.”
*433 By properly modifying the initial sentence, the district court manifestly and reasonably relied on its original grounds for sentencing Grant at the middle of the guidelines range when it reduced his term of imprisonment to the middle of the 2011 amended guidelines range. See, e.g., United States v. Clark, 563 F.3d 722 (8th Cir.2009). In so doing, the district court did precisely what we said in Clark — and reaffirmed in Burrell — was “more than adequate[ ] to address[ ] the relevant § 3553(a) factors.” Id. (emphasis added); see Burrell, 622 F.3d at 965 (“Our cases applying Clark uniformly have involved proportionality between the initial sentence and the amended sentence.”).
The Burrell panel reasoned that the critical factor distinguishing its case from Clark was “missing” proportionality between “the initial sentence and the amended sentence.” Burrell, 622 F.3d at 965 (emphasis added). Now, the majority abandons this touchstone in favor of a new one — proportionality between one reduced “term of imprisonment,” 18 U.S.C. § 3582(c)(2), and another reduced “term of imprisonment,” id. See ante at 431. Even if a reduced sentence is proportional to the initial sentence, the majority requires district courts to provide additional justification for a reduced sentence whenever any previous sentence reduction was disproportional to the initial sentence. See ante at 430.
The majority imposes this requirement even here, where the rationale for the intervening disproportionality has disappeared: Grant’s prison record, so positive at his first sentence modification, is now blemished with two disciplinary infractions, reflecting a renewal of his long criminal history. Neither Burrell nor 18 U.S.C. § 3582(c)(2) mandates the majority’s new requirement, and I see no reason to create such an unnecessary requirement in this case.
B. No Plain Error
Because a district court’s “fail[ure] to adequately explain the chosen sentence” is a “procedural error,” Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), it is “forfeited, and therefore may be reviewed only for plain error, if no objection was raised in the district court,” United States v. Miller, 557 F.3d 910, 916 (8th Cir.2009). If not bound by Burrell, I would review Grant’s claim only for plain error because he did not “raise[ ] [it] in the district court,” id. Whatever error the majority finds, it is certainly not “plain.”
The Burrell majority, fashioning a straw man argument from our reference in United States v. Statman, 604 F.3d 529 (8th Cir.2010), to the defendant’s failure to object at “the time of sentencing,” id. at 534 (emphasis added), proceeded to rebut this argument with the Supreme Court’s admonition in Dillon that “§ 3852(c)(2) does not authorize a sentencing or resentencing proceeding,” 560 U.S. at -, 130 S.Ct. at 2690 (emphasis added). See Burrell, 622 F.3d at 965. By emphasizing our narrow application in Statman of a broad rule, the Burrell majority avoided the impossible challenge of reconciling its holding with the underlying procedural rule. Indeed, the quotation from Statman containing the reference to “the time of sentencing” cited Miller[1] s broader language. See Statman, 604 F.3d at 534 (“ ‘Procedural sentencing errors ... may be reviewed only for plain error[] if no objection was raised in the district court.’ ” (quoting Miller, 557 F.3d at 916) (emphasis added)); see also United States v. Burnette, 518 F.3d 942, 946 (8th Cir.2008) (“Procedural sentencing errors are forfeited, and therefore may be reviewed only for plain error, if the defen *434 dant fails to object in the district court." (emphasis added)). This broad rule flows from one of the oldest tenets in our jurisprudence: “No procedural principle is more familiar ... than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.” Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944).
To manufacture an exception to this principle, the Burrell majority again employed a straw man. Quoting Fed. R.Civ.P. 51(b), the Burrell majority emphasized one phrase, “ ‘when the court ruling or order is made or sought,’ ” but ignored the all-important preceding “ ‘may.’ ” Burrell, 622 F.3d at 966 (quoting Fed.R.Civ.P. 51(b)). “May,” of course, is permissive: “A party may [ (i.e., is permitted to) ] preserve a claim of error by informing the court — when the court ruling or order is made or sought — of the ... party’s objection,” Fed.R.Civ.P. 51(b). See, e.g., Black’s Law Dictionary 1000 (8th ed. 2004) (defining “may” as “[t]o be permitted to”). Making a contemporaneous objection is one way of preserving a claim of error, but it is not the only way. See, e.g., Caterpillar Inc. v. Lewis, 519 U.S. 61, 74, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (“Lewis, by timely moving for remand, did all that was required to preserve his objection to removal.”); United States v. Flenoid, 415 F.3d 974, 976 (8th Cir.2005) (“The government argues that ‘[a] motion in limine is not a substitute for an objection and does not alone preserve error for review.’ We disagree.” (internal citation omitted)); United States v. Johnson, 906 F.2d 1285, 1290 (8th Cir.1990) (“Normally the denial of a pretrial motion to suppress evidence preserves the objection for appeal and defense counsel need not renew the objection at trial.”).
The district court had “jurisdiction to determine,” Yakus, 321 U.S. at 444, 64 S.Ct. 660, Grant’s claim that the district court insufficiently explained the sentence reduction, and Grant “ha[d] an opportunity to object,” Fed.R.Civ.P. 51(b). He could have filed a motion to reconsider the order [1] See Burrell, 622 F.3d at 967 (Loken, J., dissenting). Although “[njone of the Rules of Criminal Procedure authorizes a generic motion to reconsider,” United States v. Rollins, 607 F.3d 500, 502 (7th Cir.2010), motions to reconsider are “a well-established procedural rule for criminal, as well as civil, litigation,” United States v. Healy, 376 U.S. 75, 80, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). The Supreme Court “grounded [its] decision in Healy, not on any express authorization ..., but rather on ‘traditional and virtually unquestioned practice.’ ” United States v. Dieter, 429 U.S. 6, 8 n. 3, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976) (quoting Healy, 376 U.S. at 79, 84 S.Ct. 553). Since 1964, the Supreme Court has consistently rejected efforts by our sister circuits to restrict Healy. See, e.g., Ibarra, 502 U.S. at 6, 112 S.Ct. 4 (“We think that the Court of Appeals’ present effort to carve out a different exception to the general rule laid down in Healy must likewise be rejected.”). Given Grant’s long-established right to object by filing a motion to reconsider, he should not be surprised if failing to do so prejudices him *435 and defeats his challenge on appeal. See Fed.R.Civ.P. 51(b).
The Burrell majority’s holding to the contrary is particularly troubling because the Supreme Court has recognized in a similar context that a party’s failure to file a motion to reconsider is prejudicial. See Woelke & Romero Framing, Inc. v. NLRB., 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982). In Woelke, the Supreme Court considered whether an objection had “ ‘been urged before the [National Labor Relations] Board.’ ” Id. at 665, 102 S.Ct. 2071 (quoting 29 U.S.C. § 160(e)). Rejecting the petitioner’s argument that there was no opportunity to object, Justice Marshall wrote for a unanimous court, “[the petitioner] could have objected to the Board’s decision in a petition for reconsideration or rehearing. The failure to do so prevents consideration of the question by the courts.” Id. at 666, 102 S.Ct. 2071 (emphasis added). Applying Woelke, we have recognized that when a party cannot make a contemporaneous objection on the record, timely moving for reconsideration preserves an objection. See Des Moines Mailers Union v. NLRB, 381 F.3d 767, 770 n. 1 (8th Cir.2004) (“[W]e have held that a party who prevails before an administrative law judge must at least present objections to the Board in a motion for reconsideration.” (emphasis added)); NLRB v. Monson Trucking, Inc., 204 F.3d 822, 826 (8th Cir.2000) (“At the very least, [the respondent] should have pressed its objections before the Board in a motion for reconsideration.” (emphasis added)). To be sure, the Woelke line of cases involved an application of 29 U.S.C. § 160(e) and not Fed.R.Crim.P. 51(b), but the “procedural principle,” Yalcus, 321 U.S. at 444, 64 S.Ct. 660, underlying Woelke and this case is the same: parties must timely raise their claims of error in the tribunal of first instance.
As the history of Burrell itself shows, exempting defendants from this settled procedural requirement “impose[s] added and unnecessary burdens on [our] court,” Dieter, 429 U.S. at 8, 97 S.Ct. 18, without any corresponding benefit to defendants. First, rather than “giving district courts the opportunity promptly to correct their own alleged errors,” id., defendants pressing unmeritorious claims may burden our appellate docket with “Hail Mary” arguments that the district court explained too little in their case. After the Burrell panel remand, the district court in that case reimposed the same modified sentence, wrote eight pages of additional explanation, and almost two years to the day after our clerk docketed Burrell’s original § 3852(c)(2) appeal, we affirmed. See United States v. Burrell, 414 Fed.Appx. 887 (8th Cir.2011) (unpublished per curiam); United States v. Burrell, No. 06-CR-81, 2010 WL 4339188 (D.Minn. Oct. 26, 2010).
Second, only those defendants with meritorious claims will seek to “cure[] [the error] ‘up front,’ [by filing] a motion to reconsider,” Burrell, 622 F.3d at 967 (Lo-ken, J., dissenting), because to them the length of the appeals process may actually matter. For example, had Grant successfully moved the district court for reconsideration, he would have left prison months ago. Instead, American taxpayers have paid Grant’s lawyer to file an appellate brief containing one page of argument, the U.S. Attorney’s Office has expended its limited resources to file a ten-page brief, and we spend countless hours deciding this case. And for what? — so this case can return to the district court for an additional explanation of what is already plain from “the entire sentencing record,” United States v. Guarino, 517 F.3d 1067, 1069 (8th Cir.2008).
*436 III. CONCLUSION
Sentencing modifications under § 3852(c)(2) need not be as complex as Burrell and the majority require. When district courts hold no hearing and fail to explain themselves, defendants should first object at the appropriate time through motions to reconsider, “giving district courts the opportunity promptly to correct their own alleged errors,” Dieter, 429 U.S. at 8, 97 S.Ct. 18. Instead, Burrell mandates a complex and roundabout process, and today the majority draws even more cases into Burrell’s grasp. I respectfully dissent.

. An objection presented in a motion to reconsider would have been timely had Grant filed it within the period for filing an appeal, and filing the motion would have tolled the period for filing an appeal. See, e.g., United States v. Ibarra, 502 U.S. 1, 6, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991) ("[A] motion for rehearing in a criminal case, like a motion for rehearing in a civil case, renders an otherwise final decision of a district court not final until it decides the petition for rehearing.").